# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Marriage of )
)
JESSICA BODGE, )
)
        Appellant, )
)
    and )
)
BRIAN BODGE, )
)
        Respondent. )
_____)

No. 76954-5-I
(consolidated with
Nos. 77155-8-I and 77494-8-I)

ORDER GRANTING MOTION FOR
RECONSIDERATION IN PART AND
DENYING IN PART; AND WITHDRAWING
OPINION AND SUBSTITUTING OPINION

The appellant, Jessica Bodge, has filed a motion for reconsideration. The respondent, Brian Bodge, has filed an answer, and the appellant has filed a reply. The court has taken the matter under consideration and has determined that the motion for reconsideration should be granted.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted in part as to removing the reference from the opinion to the respondent having completed domestic violence treatment, and denying in part all other remaining issues; and, it is further

ORDERED that the opinion in the above-referenced case filed on September 4, 2018, is withdrawn and a substitute opinion be filed in its place.

FOR THE COURT:

Trickey, J.P.T.

Mann, ACJ

Schindler, J

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 NOV 26 AM 10: 22

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 76954-5-I |
| | ) | (consolidated with |
| JESSICA BODGE, | ) | Nos. 77155-8-I and 77494-8-I) |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| BRIAN BODGE, | ) | |
| | ) | |
| Respondent. | ) | FILED: November 26, 2018 |

TRICKEY, J. — Brian Bodge and Jessica Bodge dissolved their marriage in 2015.[1] Their three children primarily resided with Jessica. In 2016, Jessica filed a notice of intent to relocate with the children to Alabama.

Following a relocation trial, the trial court granted Jessica's request to relocate with the children, conditioned upon her completion of a psychological evaluation and entry into any recommended treatment. Jessica failed to complete the required psychological examination. The trial court made Brian the parent with whom the children primarily reside. Jessica appeals, arguing that the trial court committed numerous errors. Finding no error, we affirm.

## FACTS

Jessica and Brian married in December 1997. They separated in September 2010 after Jessica alleged that Brian perpetrated domestic violence

---

[1] For clarity, this opinion will refer to Jessica Bodge and Brian Bodge by their first names. No disrespect to the parties is intended.

against her. The parties reconciled. On October 9, 2012, Jessica again filed for legal separation.

On October 10, 2014, the children's guardian ad litem (GAL) submitted a report.[2] The GAL recommended that Jessica be the parent with whom the children primarily reside and have sole decision-making authority, and that parental disputes would be submitted to arbitration. The GAL recommended parenting classes for Brian, along with psychological therapy.

On July 9, 2015, Jessica and Brian's marriage was dissolved. The trial court entered an agreed final parenting plan resulting from mediation (the July 2015 parenting plan). The July 2015 parenting plan stated that Jessica would be the parent with whom the children primarily reside, imposed a domestic violence limiting factor on Brian, set forth the process by which Jessica could relocate with the children, and granted sole decision-making authority to Jessica.[3] The July 2015 parenting plan required that Brian's relationship with the children be repaired prior to Jessica being allowed to relocate with the children.

The July 2015 parenting plan called for Alecia Richards, a therapist, to assist in determining whether Brian's parenting had improved such that he could have overnights with the children, and whether to allow Jessica to relocate. Richards became unable or unwilling to evaluate the children or provide testimony.

On June 6, 2016, Jessica filed a notice of intended relocation with the children to Alabama in order to be closer to her extended family. Brian filed an

---

[2] The trial court admitted the entirety of the GAL's report, and directed the parties to challenge its relevance during trial as necessary.

[3] The July 2015 parenting plan provided a phased residential schedule for Brian and required the parties to submit disputes to arbitration.

objection to the relocation, a petition to modify the July 2015 parenting plan, and a motion for a temporary order preventing the intended relocation.

The trial court restrained Jessica from moving with the children prior to trial. The trial court noted that Brian's relationship with the children had still not been repaired. The trial court stated that a neutral third party should conduct reunification counseling between Brian and the children. The trial court found that Jessica had not engaged in good faith efforts to undergo arbitration and assist Brian in gaining overnights with the children.

On August 30, 2016, the parties went to arbitration to resolve the process by which Brian could transition to having overnights with the children. On September 14, 2016, the arbitrator issued his decision. The arbitrator decided that another therapist, Pat Martinelli, would take over Richard's role under the July 2015 parenting plan. The arbitrator stated that, once Martinelli determined that Brian's time could be expanded, Brian would be allowed overnights with the children immediately.[4]

The relocation trial began on January 18, 2017. Brian expressed regret during his testimony for having agreed to the domestic violence limiting factor in the July 2015 parenting plan. He pointed out that the criminal case resulting from the alleged 2010 domestic violence incident had been dismissed with prejudice, and stated that he had been acting in self-defense. He denied perpetrating domestic violence upon the children.

Domestic violence experts for both Brian and Jessica testified that a

---

[4] The trial court denied Jessica's subsequent motion for superior court review of the arbitration decision.

3

perpetrator blaming the victim, claiming self-defense, or changing the narrative about the incident would be concerning or indicate that domestic violence treatment was ineffective.

Martinelli testified that her interviews with the children and Brian indicated that they had good relationships, and that Brian had demonstrated good parenting techniques. Martinelli stated that while she was treating Brian and the children, Jessica improperly attempted to share information with Martinelli.

On February 1, 2017, Brian moved to modify the July 2015 parenting plan. Brian argued that the children's current living situation was harmful to their physical, mental, or emotional health, and that Jessica had not followed the July 2015 parenting plan, citing evidence from the relocation trial. Brian requested joint decision-making, removal of the domestic violence limiting factor against him, imposition of an abusive use of conflict parental conduct factor against Jessica, and modification of his child support obligation.

The final day of testimony was March 16, 2017. On April 14, 2017, the trial court issued a memorandum decision, including findings of fact and conclusions of law. The trial court considered the mandatory RCW 26.09.520 factors and concluded that they favored allowing Jessica's intended relocation. The trial court also found that Jessica had engaged in abusive use of conflict, and imposed an abusive use of conflict limiting factor on Jessica. The trial court increased Brian's visitation time, which would be spent in larger blocks because of the distance the relocation would create.

The trial court also stated,

> as a condition of custody, [Jessica] will be required to undergo a psychological evaluation and follow the recommendations for treatment. In the course of this evaluation all collaterals who participated at trial shall be reviewed. [Jessica] shall comply within a discrete time frame set by the court. And if there is failure to comply, custody will change to [Brian].[5]

The trial court lifted Brian's domestic violence limiting factor as it applied to the children pursuant to RCW 26.09.191(2)(n), in part based on Martinelli's testimony. The trial court did not lift Brian's domestic violence limiting factor as to Jessica in light of her continued allegations of Brian's abusive use of conflict and Brian's minimization of the 2010 domestic violence allegation prior to the relocation trial. The trial court conditioned a complete lifting of the domestic violence limiting factor on Brian submitting to a domestic violence reevaluation and completion of any recommended treatment.

The trial court found that joint decision-making was warranted following the imposition of the abusive use of conflict limiting factor upon Jessica. The trial court required the parties to submit disputes to a designated case manager or parenting plan monitor. Any dispute that could not be resolved by the case manager or parenting plan monitor would be resolved by motion to the trial court.

On May 10, 2017, the trial court held a hearing for presentation of final orders and to rule on various motions. The trial court noted its continuing concerns over Jessica's mental health condition.[6] Jessica's attorney had filed a motion to withdraw, as she could not afford to be Jessica's attorney any longer. Brian

---

[5] 1 Clerk's Papers (CP) at 186 (footnote and boldface omitted).
[6] Jessica had recently called the suicide crisis line, and the evaluator was concerned enough to call 911. The police and Brian conducted a welfare check on Jessica.

opposed the motion, and the trial court denied Jessica's attorney's motion.

During the hearing, the trial court clarified that "all collaterals who participated at trial shall be reviewed" meant that Jessica's psychological evaluation had to demonstrate that all collaterals at trial had been contacted, although that did not require in person contact.[7]

On May 11, 2017, the trial court issued its final order and findings, which incorporated its prior findings and conclusions. Jessica was required to undergo a psychological evaluation by a court-approved psychiatrist by July 14, 2017, and be in active treatment no later than August 11, 2017. Karen Ballantyne was named as the parties' parenting plan monitor.

On June 8, 2017, the trial court filed the modified final parenting plan (the June 2017 parenting plan). The June 2017 parenting plan incorporated the trial court's findings of fact and conclusions of law, and made several changes to the parties' visitation schedule and communications.

On June 8, 2017, Jessica filed a pro se notice of appeal in this court. She sought review of the trial court's April 14, 2017 findings of fact and conclusions of law and its related May 11, 2017 final order.

On June 10, 2017, Jessica's attorney filed another notice of intent to withdraw, effective June 23, 2017.

On June 19, 2017, Brian completed a domestic violence and anger management evaluation performed by Tim Tackels. Tackels recommended that

---

[7] After noting that there had been a suggestion that the phrase meant only certain people at trial, the trial court stated, "No, that's not what it says. I want the evaluator to have a full picture of what happened at trial." 13 Report of Proceedings (RP) (May 10, 2017) at 1652.

Brian undergo an abbreviated six-month domestic violence treatment program.

On July 3, 2017, Jessica filed a psychological evaluation report prepared by JoAnne Solchany. Solchany is a psychiatric nurse practitioner, psychotherapist, and infant mental health specialist.[8] Solchany reviewed the parties' prior psychological evaluations and medical records; the GAL report; motions, declarations, exhibits, and other evidence from the relocation trial; letters from treatment providers; the parties' closing arguments; and the trial court's June 2017 parenting plan and related documents.

On July 7, 2017, Brian moved to become the parent with whom the children reside a majority of the time based on Jessica's failure to complete a satisfactory psychological evaluation. On July 14, 2017, the trial court held a hearing on Brian's motion. Jessica represented herself at the hearing.

The trial court stated that Solchany's evaluation did not satisfy the July 2017 parenting plan's psychological evaluation condition. The trial court noted that it had not approved Solchany and that she was not a psychiatrist. The trial court also concluded that her psychological evaluation was insufficient because she had not reviewed the trial transcript or all the collaterals who participated at trial. The trial court granted Brian's motion and ordered that Brian would be the parent with whom the children primarily reside.[9]

---

[8] Solchany diagnosed Jessica in part with Acute Stress Disorder and ongoing Post-Traumatic Stress Disorder.

[9] Brian also moved to have his domestic violence limiting factor regarding Jessica lifted in light of Tackles's evaluation. The trial court denied Brian's request to remove the domestic violence limiting factor as to Jessica. The trial court stated that Brian could move to have the limiting factor lifted as to Jessica if he completed the treatment recommended by Tackels.

On August 16, 2017, the trial court held a hearing on the entry of a final parenting plan. New counsel represented Jessica.[10] Jessica argued that the trial court lacked jurisdiction to modify the June 2017 parenting plan because she had appealed it. The trial court rejected Jessica's argument, concluding that her failure to complete a condition in the June 2017 parenting plan necessitated the entry of a new final parenting plan, and thus did not constitute a modification.

Brian also requested a cease and desist order against Jessica's use of the children's images on her GoFundMe online account with an accompanying statement that the children were survivors of domestic violence and abuse. The trial court found that Jessica's use of the children's images and statement that they had been abused were inherently harmful to the children, and ordered her to remove the children's images from the GoFundMe account.

On September 27, 2017, the trial court entered a new final parenting plan (September 2017 parenting plan). The September 2017 parenting plan provided for a phased visitation schedule for Jessica.[11] The trial court granted Brian sole decision-making authority over major decisions in light of Jessica's abusive use of conflict and the parties' inability to cooperate with one another in decision-making.

Jessica filed two motions to stay the trial court's decision, both of which a

---

[10] Dennis McGlothin of Western Washington Law Group represented Jessica at the hearing.

[11] Under Phase 1, Jessica would have supervised contact with the children for specified hours twice a week. Jessica would move to Phase 2 of the residential schedule if she did not engage in abusive use of conflict for three months and underwent a satisfactory psychological evaluation. Under Phase 2, Jessica would have "unsupervised residential time on alternating weekends and one mid-week." 8 CP at 3352. Phase 2 was analogous to Phase III of Brian's residential schedule under the July 2015 parenting plan.

commissioner of this court denied.[12]

Jessica appeals.[13]

## ANALYSIS

### Subject Matter Jurisdiction

Jessica argues that the trial court erred when it entered the September 2017 parenting plan because it lacked subject matter jurisdiction to modify the June 2017 parenting plan. Specifically, she argues that she had appealed the June 2017 parenting plan and the trial court did not obtain this court's permission prior to modifying the June 2017 parenting plan. Because the trial court's entry of the September 2017 parenting plan was an enforcement action that did not require permission from this court, we disagree.

> In a civil case, except to the extent enforcement of a judgment or decision has been stayed as provided in rules 8.1 or 8.3, the trial court has authority to enforce any decision of the trial court and a party may execute on any judgment of the trial court. Any person may take action premised on the validity of a trial court judgment or decision until enforcement of the judgment or decision is stayed as provided in rules 8.1 or 8.3.

RAP 7.2(c).

---

[12] Commissioner's Ruling Denying Motion to Stay, entered July 26, 2017; Commissioner's Ruling Denying Motion to Stay, entered December 26, 2017.

[13] Brian argues that the statement of facts in Jessica's opening brief is improper because it does not accurately represent the facts and contains argument. We disagree.

The parties' briefs on appeal should contain "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement." RAP 10.3(a)(5).

In her statement of facts, Jessica generally provides citations to the record in support of her stated facts. Further, her statement of facts does not contain improper argument. Therefore, we conclude that Jessica's statement of facts does not violate RAP 10.3(a)(5).

"The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision." RAP 7.2(e). "If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e).

Here, the trial court's entry of the September 2017 parenting plan was necessitated by Jessica's failure to undergo the psychological evaluation the June 2017 parenting plan required. Thus, it constituted an enforcement action of a prior decision of the trial court under RAP 7.2(c) rather than a modification of a decision subject to appeal.[14]

Although the September 2017 parenting plan differed from the June 2017 parenting plan in terms of Jessica's residential schedule and the parties' decision-making authority, these changes were premised on prior findings of the trial court. Further, the changes flowed from Brian becoming the parent with whom the children primarily reside following Jessica's failure to satisfy the condition in the June 2017 parenting plan. Therefore, we conclude that the trial court did not lack subject matter jurisdiction under RAP 7.2(e).

---

[14] We note that a commissioner of this court previously rejected Jessica's argument that this court lacked subject matter jurisdiction under RAP 7.2(e) when denying Jessica's motions to stay the trial court's order. Commissioner's Ruling Denying Motion to Stay, entered July 26, 2017; Commissioner's Ruling Denying Motion to Stay, entered December 26, 2017. A three-judge panel of this court denied Jessica's subsequent motion to modify the commissioner's July 26, 2017 ruling. Order Denying Motion to Modify, No. 76954-5-I (consol. with Nos. 77155-8 and 77494-5), entered December 7, 2017.

Jessica also argues that the trial court could not modify the June 2017 parenting plan because Brian did not file a petition to modify. See In re Marriage of Christel and Blanchard, 101 Wn. App. 13, 22, 1 P.3d 600 (2000) (three ways to change a permanent parenting plan are "by agreement, by petition to modify, and by temporary order"). This is unpersuasive.

As discussed above, the trial court's entry of the September 2017 parenting plan was necessitated by Jessica's failure to satisfy a condition contained in the June 2017 parenting plan. The June 2017 parenting plan specified that Brian would become the parent with whom the children primarily reside if Jessica failed to undergo a satisfactory psychological evaluation. The change in Jessica's visitation schedule between the June 2017 parenting plan and the September 2017 parenting plan was temporary, as it was conditioned on her completion of a satisfactory psychological evaluation. Similarly, granting sole decision-making authority to Brian was necessitated by his becoming the parent with whom the children primarily reside, combined with the abusive use of conflict finding against Jessica and the lack of cooperation between the parties.

Thus, we conclude that the trial court did not impermissibly modify the June 2017 parenting plan by entering the September 2017 parenting plan, although Brian did not file a petition to modify.

### Joint Decision-Making

Jessica argues that the trial court erred when it ordered joint decision-making between the parties in the June 2017 parenting plan because of Brian's history of domestic violence. Because the September 2017 parenting plan granted

11

sole decision-making authority to Brian, with disputes resolved by the parenting plan monitor or the trial court, we conclude that this issue is moot.

"'A case is moot if a court can no longer provide effective relief.'" In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)).

Here, the September 2017 parenting plan, which granted sole decision-making authority to Brian, superseded the June 2017 parenting plan. Jessica acknowledges that joint decision-making ended when the September 2017 parenting plan was filed. Therefore, this court cannot provide Jessica with effective relief for any error in the decision-making section of the June 2017 parenting plan, and we reject her argument as moot.

### Findings Related to Abusive Use of Conflict

Jessica argues that the trial court's findings regarding her abusive use of conflict are not supported by substantial evidence. We will examine each of her challenges in turn.[15]

We review the trial court's findings of fact for substantial evidence. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a

---

[15] We note that Jessica has not cited to the record in support of her argument, and thus has not directed the court's attention to which findings of the trial court she is challenging. RAP 10.3(a)(6). Further, she has not provided a separate assignment of error for each finding of fact that she is challenging on appeal. RAP 10.3(g); see Appellant's Opening Br. at 4 ("The trial court erred when [it] found that [Jessica] had engaged in abusive use of conflict because the court's findings of fact are not supported by substantial evidence"). Nonetheless, we will assume that she is challenging the listed examples underlying the trial court's finding that Jessica engaged in abusive use of conflict, and reach the merits of her arguments.

fair-minded, rational person of the truth of the declared premise.'" In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)).

"Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law." In re Rockwell, 141 Wn. App. at 242. "A court should 'not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" In re Rockwell, 141 Wn. App. at 242 (alteration in original) (quoting In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

First, Jessica argues that the trial court's finding that she has continued to portray Brian in a negative light and that this portrayal has adversely impacted his relationship with the children is not supported by substantial evidence. We agree.

At trial, Martinelli testified that Jessica cast Brian in a negative light by frequently pointing out his deficits, and that she assumed that Jessica discussed Brian with the children. And Jessica's arguments before the trial court frequently touched on Brian's real or perceived deficits. But testimony in the record also established that Jessica did not voice her negative views of Brian in front of the children. Brian has not cited evidence in the record supporting the trial court's finding that Jessica's negative portrayals of Brian, either in or out of court, have negatively impacted his relationship with the children.

Martinelli's testimony regarding Jessica's portrayal of Brian is insufficient to support the trial court's finding. Martinelli could not conclusively say that Jessica

had portrayed Brian negatively to the children, and did not testify about the negative impact of any such portrayal. Multiple other witnesses testified that Jessica did not voice her negative portrayals in front of the children. Therefore, we conclude that this finding was not supported by substantial evidence.

Second, Jessica argues that the trial court's finding that Jessica attempted to influence a reviewer's decisions and impressions of the parties was not supported by substantial evidence. Specifically, she contends that the record does not clearly demonstrate that her e-mail to retired Commissioner Arden Bedle, whom the parties had as a potential arbitrator, supports the trial court's finding that she attempted to influence him. We disagree.

In its list of examples supporting its finding that Jessica engaged in abusive use of conflict, the trial court stated, "Evidence presented of other attempts to engage in communications with decision makers in this case (email to ret. Commissioner Bedle) in an attempt to influence the reviewer's decisions and impressions of the parties."[16]

In a declaration, Jessica stated that "Brian contacted retired Commissioner Arden Bedle to see if he'd arbitrate. I exchanged emails with Commissioner Bedle, and informed him of the past [domestic violence] and 191 restrictions. Commissioner Bedle stated that he did not have appropriate facilities."[17] Jessica's declaration establishes that she informed a prospective decision maker of Brian's history of domestic violence and the imposition of a domestic violence limiting factor against him. This constitutes substantial evidence supporting the trial court's

---

[16] 1 CP at 185.
[17] 4 CP at 1540. Neither party provided a citation to the e-mail itself in the clerk's papers.

finding that Jessica attempted to influence the views of decision makers to Brian's detriment. We reject Jessica's challenge to this finding.

Third, Jessica argues that the trial court's finding that she attempted to intimidate or seek retribution against Martinelli for testifying at the relocation trial is not supported by substantial evidence "because [Jessica's] claim that Martinelli failed to report as a mandatory reporter was taken seriously by the Department of Health."[18] We disagree.

At trial, Martinelli testified that she was a mandatory reporter. She testified that she made a report to Child Protective Services (CPS) about an incident when Brian left the children alone at his home, at Jessica's urging. Martinelli also testified that she was aware that Jessica was unhappy with Martinelli's role in assisting Brian in being able to have overnights with the children.

During the relocation trial, Jessica filed an online complaint to the Department of Health that Martinelli had failed to report as a mandatory reporter. Martinelli's conduct underlying Jessica's complaint had occurred months prior to Jessica filing her complaint. Martinelli testified that the timing indicated that Jessica's complaints were retaliatory or for intimidation purposes. Martinelli noted that she had not seen the family since early November, and that "if these were legitimate complaints they would have been filed in November or October when all of these things were occurring. But the fact that they occurred and were filed at the same time that the trial was going on was . . . just too coincidental."[19]

---

[18] Appellant's Opening Br. at 47.
[19] 7 RP (Jan. 31, 2017) at 832.

Here, the trial court's finding primarily pertains to Jessica's intent in bringing a formal complaint against Martinelli only after she assisted Brian in obtaining overnights with the children and testified at trial. The merit of Jessica's complaint to the Department of Health does not bear on Jessica's underlying intent.

Further, the trial court's finding that Jessica's filing of formal complaints against witnesses during trial was done for retaliatory or intimidation purposes is supported by substantial evidence. Martinelli's testimony established that her alleged failure to report had occurred in October or November 2016, but Jessica waited until trial began in January 2017 to file her complaint. In addition, Martinelli testified that she was aware of Jessica's displeasure at Martinelli's role in assisting Brian. Viewed together, Martinelli's testimony and the timing of Jessica's filing of complaints against her during trial constitute substantial evidence supporting the trial court's finding.

The remainder of Jessica's challenges are without merit. Two of her challenges concern alleged findings by the trial court regarding Jessica's court and arbitration filings, including that they increased costs and constituted abuses of the process. Neither of these alleged findings appear in the trial court's listed examples supporting its overall finding that Jessica engaged in abusive use of conflict. Jessica has not cited to the record in support of her arguments, and thus has not directed the court's attention to which findings she is challenging. RAP 10.3(a)(6). Therefore, we reject these arguments.

Jessica also argues that she cannot be penalized for truthful testimony about Brian's deficiencies or for Martinelli's testimony about the inconsistency

16

between the children's statements and their demeanor around Brian. Jessica also argues that the trial court erred in stating that her call to CPS was ultimately deemed unfounded, and that the trial court erred when it noted that the volume and content of her text messages was concerning. Jessica's arguments attack the trial court's recitation of evidence presented at the relocation trial, or require this court to reweigh the evidence or judge witness credibility on appeal. In re Rockwell, 141 Wn. App. at 242. We reject Jessica's challenges.

In sum, we conclude that the trial court's finding that Jessica portrayed Brian in a negative light and that this portrayal adversely impacted the children is not supported by substantial evidence. We otherwise reject Jessica's challenges to the trial court's findings regarding Jessica's abusive use of conflict, including the lack of merit in her call to CPS and the volume and content of her text messages. We also note that Jessica has not challenged the remainder of the trial court's findings supporting its overall finding that she engaged in abusive use of conflict. Therefore, we conclude that the trial court's overall finding is supported by substantial evidence.

## Findings Supporting Modification

Jessica argues that the trial court erred when it failed to make mandatory findings prior to modifying the July 2015 parenting plan.[20] Because the trial court made the requisite RCW 26.09.260 findings, we disagree.

---

[20] Jessica also argues that the trial court's order naming Brian as the parent with whom the children would primarily reside constituted an impermissible sanction against her for failing to comply with the trial court's order. Jessica does not cite legal authority in support of this argument. RAP 10.3(a)(6). Further, her argument is premised on her contention that the trial court's decision was erroneous because it did not make required findings and its decision was not supported by substantial evidence. We reject this argument.

> [T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

RCW 26.09.260(1).

"In determining whether a substantial change in circumstances has occurred to warrant modification, the trial court must look only at the circumstances of the child or the custodial parent and not those of the noncustodial parent." George v. Helliar, 62 Wn. App. 378, 383, 814 P.2d 238 (1991).[21]

"A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist: . . . (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e).

"Generally, a trial court's rulings dealing with the provisions of a parenting plan are reviewed for abuse of discretion." In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Littlefield, 133 Wn.2d at 46-47.

"Because of the trial court's unique opportunity to observe the parties, the appellate court should be 'extremely reluctant to disturb child placement

---

[21] We note that a relocation petition may also serve as a basis for modifying an existing parenting plan. RCW 26.09.260(6). The statute "also expressly permits consideration of new parenting plans as a result of a relocation request." In re Marriage of McDevitt and Davis, 181 Wn. App. 765, 771, 326 P.3d 865 (2014).

dispositions.'" In re Parentage of Schroeder, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting In re Marriage of Schneider, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), overruled on other grounds by In re Littlefield, 133 Wn.2d at 57).

Here, following Brian's motion to modify the July 2015 parenting plan, the trial court made the findings required under RCW 26.09.260 in its memorandum decision following the relocation trial. Jessica's abusive use of conflict arose after the entry of the July 2015 parenting plan. The trial court noted that Jessica's abusive use of conflict was "relentless[]" and could harm the children if left unchecked.[22]

The trial court concluded that the new parenting plan, which imposed an abusive use of conflict limiting factor on Jessica and conditioned her remaining the parent with whom the children primarily reside on completion of a psychological evaluation, was in the best interests of the children. Thus, the trial court made the findings required under RCW 26.09.260 prior to modifying the July 2015 parenting plan, and was justified in limiting Jessica's rights to relocate and remain the parent with whom the children primarily reside under RCW 26.09.191(3). We conclude that the trial court did not abuse its discretion.[23]

---

[22] 1 CP at 186.

[23] Jessica also argues that the trial court erred when it modified the parties' residential schedule following the relocation trial because it did not make required findings under RCW 26.09.260(2). This is unpersuasive.

Generally, the trial court "shall retain the residential schedule established by the . . . parenting plan." RCW 26.09.260(2). But "[t]he court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child." RCW 26.09.260(6).

Here, the June 2017 parenting plan was a modification of the July 2015 parenting plan. The modification followed Jessica's filing of a notice of intent to relocate and a trial on her request. Because the modification of the residential schedule was justified under RCW 26.09.260(6), we reject Jessica's argument.

19

Brian as Parent with whom the Children Primarily Reside

Jessica argues that the trial court erred by establishing Brian as the parent with whom the children primarily reside because of Brian's history of domestic violence. She argues that the trial court did not adequately consider the ongoing effects of the past domestic violence involving the children, relying primarily on Rodriguez v. Zavala, 188 Wn.2d 586, 398 P.3d 1071 (2017).

In Rodriguez, the Washington Supreme Court, in analyzing the broad definition of domestic violence in RCW 26.50.010(3), held that a person who is the victim of domestic violence which includes violent threats against that person's children may petition for a domestic violence protection order prohibiting the perpetrator from contacting the children. 188 Wn.2d at 590, 598-99. In its discussion of the case, the Supreme Court noted the need to protect a child even if the child did not witness the abuse of the victim. Rodriguez, 188 Wn.2d at 588. Similarly, this court has stated that "[e]ven when there is no evidence of a direct assault on a child, fear of violence is a form of domestic violence that will support an order for protection." Maldonado v. Maldonado, 197 Wn. App. 779, 791, 391 P.3d 546 (2017).

Here, unlike Rodriguez, the trial court acknowledged the past history of domestic violence as it affected the children. It did not minimize the impact of Brian's actions. The trial court carefully examined his behavior. It relied on Martinelli's testimony that Brian had demonstrated good parenting techniques, and that her interviews with the children and Brian indicated that they had good relationships. The trial court found in its consideration of the relocation factors

that, "in the best interest of the children, that [Brian] is no longer a threat to the children in compliance with, and as required by RCW 26.09.191(2)(n). The testimony of Ms. Martinelli supports this, the children's performance supports this, and the general circumstances support this finding."[24] This court cannot reweigh the evidence at the relocation trial. In re Rockwell, 141 Wn. App. at 242. Therefore, we conclude that Jessica's cited case law and the record before the trial court do not support her contention that the trial court erred in establishing Brian as the parent with whom the children reside the majority of the time.[25]

### Appointment of Case Manager

Jessica argues that the trial court erred when it appointed a case manager and required the parties to submit disputes to her. Because the trial court properly appointed a case manager while maintaining the parties' right to superior court review, we disagree.

---

[24] 1 CP at 489 (footnote omitted). Jessica briefly argues that there was insufficient evidence for Brian to meet the RCW 26.09.191(2)(n) exception. But as discussed above, the trial court's determination was based on Martinelli's testimony and its consideration of the circumstances of the case. This constitutes substantial evidence supporting the trial court's finding. In re Griswold, 112 Wn. App. at 339. We reject Jessica's argument.

In her reply brief, Jessica argues for the first time that the trial court erred when it did not make specific findings required by RCW 26.09.191(2)(n). We reject this argument as untimely. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); see RAP 10.3(c).

[25] Jessica also argues that the trial court erred when it lifted Brian's domestic violence limiting factor as to the children because he continued to deny that he committed acts of domestic violence toward the children. Jessica contends that the trial court's decision should be reversed as a matter of public policy because "[t]he restrictions in RCW 26.09.191 should not be removed if there is still evidence that the domestic violence perpetrator has not yet internalized the lessons of domestic violence treatment and is still engaged in abusing one of his victims." Appellant's Opening Br. at 41. Jessica does not cite case law supporting her argument. We decline to reach the merits of Jessica's argument in light of her failure to provide citations to legal authority in support of her argument. RAP 10.3(a)(6).

21

"A process for resolving disputes, other than court action, shall be provided unless precluded or limited by RCW 26.09.187 or 26.09.191. A dispute resolution process may include counseling, mediation, or arbitration by a specified individual or agency, or court action." RCW 26.09.184(4). "The parties have the right of review from the dispute resolution process to the superior court." RCW 26.09.184(4)(e).

The Court of Appeals reviews questions of statutory construction de novo. In re Marriage of Brown, 159 Wn. App. 931, 935, 247 P.3d 466 (2011). A trial court's decisions regarding the provisions of a parenting plan are reviewed for abuse of discretion. In re Littlefield, 133 Wn.2d at 46.

Here, the statute governing dispute resolution processes in permanent parenting plans uses permissive language. It does not limit trial courts to the listed examples of dispute resolution processes. Thus, the trial court could delegate dispute resolution authority to a case manager while providing the parties with the option of superior court review or resolution of the dispute.

The September 2017 parenting plan provided a dispute resolution section that stated:

> From time to time, the parents may have disagreements about shared decisions or about what parts of this parenting plan mean.
>
> a. To solve disagreements about this parenting plan, the parents will go to (check one):
>
> Court (without having to go to mediation, arbitration, or counseling, but after utilizing the services of Karin Ballantyne, the Parenting Plan Monitor).[26]

---

[26] 8 CP at 3354.

If Jessica disagreed with a major decision made by Brian, as the parent with sole decision-making authority, Jessica "shall submit her disagreement . . . to the parenting plan monitor for resolution. The parenting plan monitor shall render a decision. If the dispute is not resolved by the parenting plan monitor, then either party may submit the dispute to the Court."[27]

Neither of these provisions created improper dispute resolution procedures. The trial court performed its duty to provide a process for resolving disputes. The trial court acted within its discretion under the statutes in requiring the parties to initially submit their disputes to a case manager.[28] And the trial court provided the parties with a means to submit disputes that could not be resolved by the case manager to the trial court.

Therefore, we conclude that the trial court complied with the applicable statutes and did not abuse its discretion in crafting the September 2017 parenting plan's dispute resolution procedures.

### Prior Restraint on Speech

Jessica argues that the trial court's order to take down the children's images from her GoFundMe online account was a prior restraint of speech that violated her First Amendment rights. Because the trial court's order was limited to her use of the children's images on her GoFundMe online account, we disagree.

Prior restraints are "'[a]dministrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" In re Marriage of Suggs, 152 Wn.2d 74, 81, 93 P.3d 161 (2004)

---

[27] 8 CP at 3353 (boldface omitted).
[28] See Kirshenbaum v. Kirshenbaum, 84 Wn. App. 798, 806-07, 929 P.2d 1204 (1997).

(internal quotation marks omitted) (quoting Alexander v. United States, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1193)).

Constitutional challenges are reviewed de novo. In re Suggs, 152 Wn.2d at 79.

Here, Jessica posted a picture of her and the children to her GoFundMe online account, which also described the children as victims of domestic abuse.[29] The trial court ordered Jessica to immediately remove the children's images from her GoFundMe online account.

The trial court's order did not constitute an unconstitutional prior restraint of speech. The trial court's order was confined to Jessica's present use of the children's images on her GoFundMe online account. Further, the trial court's order does not apply to Jessica's use of the children's images on other platforms or in other contexts, presently or in the future. Thus, we conclude that the trial court's order does not constitute an unconstitutional prior restraint of speech.[30,31]

### Jessica - Attorney Fees on Appeal

---

[29] The description stated in part that the money was so that Jessica and the children could "relocate out of State to escape years of abuse. We are survivors of domestic violence." 9 CP at 3665. The description also stated, "My children witnessed my abuse and they endured it as well." 9 CP at 3665.

[30] Jessica also argues that the trial court erred because her statements that the children had been abused by Brian were supported by the record and were therefore protected speech. But the trial court explicitly declined to make findings about whether the GoFundMe online account's description was defamatory towards Brian. Therefore, we decline to reach this issue.

[31] For the first time in her reply brief, Jessica argues that the trial court did not engage in sufficient inquiry to determine whether her use of the children's images was protected. Jessica also argues that the trial court did not conduct a balancing test between her freedom of expression and the State's parens patriae duties. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy, 118 Wn.2d at 809; RAP 10.3(c). Thus, we decline to reach the merits of Jessica's arguments.

Jessica argues that she is entitled to her attorney fees on appeal under RCW 26.09.140.

> The court . . . after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any [dissolution] proceeding . . . and for reasonable attorneys' fees . . . , including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
>
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

RCW 26.09.140.

Here, both parties submitted financial declarations to this court. Jessica declared that her net monthly income is $2,304.00 and her total monthly expenses following the parties' separation are $3,851.79. She also declared that her total attorney fees for the case are "$1275,122.00," with $53,000.00 currently outstanding.[32] Jessica declares that her total available assets total $1,595.95.

Brian declares that his net monthly income is $34,907.39. His total monthly expenses and payments for other debts following the parties' separation are $14,547.00. He has spent $142,940.00 in attorney fees.

In its order denying in part and granting in part Jessica's motion for reconsideration regarding attorney fees, the trial court noted below that Jessica received $500,000.00 net after the sale of the family home, and received an additional $100,000.00 in cash from her parents as a loan. Jessica claimed that these funds were completely dissipated, but did not provide documentation of how

---

[32] Financial Decl. of Jessica Bodge at 5. It is unclear whether Jessica's total attorney costs are over $1,000,000.00 or there is an error in her financial declaration.

these funds were distributed. The trial court concluded that there was insufficient proof in the record of Jessica's need and that there was an inference of financial waste by Jessica.

The parties' financial declarations demonstrate a disparity between Jessica's and Brian's monthly incomes. But on appeal Jessica has still not accounted for the funds that she received during litigation. Thus, we decline to award Jessica her attorney fees on appeal under RCW 26.09.140.[33]

Brian - Attorney Fees on Appeal

Brian requests his attorney fees on appeal based on Jessica's intransigence throughout this litigation.

A party's intransigence may be a basis for an award of attorney fees to the opposing party. Chapman v. Perera, 41 Wn. App. 444, 456, 704 P.2d 1224 (1985). "Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions." In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006).

Here, Brian relies on Jessica's filing of motions to stay the trial court's enforcement actions to justify his request for attorney fees on appeal based on Jessica's intransigence.[34] This is insufficient to justify an award of attorney fees

---

[33] Despite arguing that she is entitled to attorney fees on appeal under RCW 26.09.140, Jessica's arguments implicate the trial court's decision to not award her the majority of her attorney fees below. Jessica has explicitly stated that she is not contesting the trial court's denial of her request for attorney fees on appeal. Thus, we reject any arguments concerning the trial court's decision to deny Jessica's request for attorney fees below.

[34] Brian cites Jessica's actions below, including her "behavior and choices at trial that served to unnecessarily lengthen the time for trial and increase the litigation costs for [Brian]." Resp't's Br. at 48. But Brian has not challenged any decision of the trial court below regarding attorney fees and Jessica's intransigence. We reject Brian's citations to Jessica's actions below.

for intransigence. Jessica's motions presented debatable issues for consideration by a commissioner of this court and did not overly extend the length of this appeal. We reject Brian's argument.

Brian also argues that he is entitled to attorney fees under RAP 18.9(a) because Jessica's appeal is frivolous.

The appellate court has discretion to order a party "to pay terms or compensatory damages to any other party . . . or to pay sanctions to the court" if the party files a frivolous appeal. RAP 18.9(a). "'[A]n appeal is frivolous if it raised no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists.'" Hanna v. Margitan, 193 Wn. App. 596, 615, 373 P.3d 300 (2016) (quoting Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 220, 304 P.3d 914 (2013)).

Here, Jessica has raised debatable issues on appeal, such as whether the trial court impermissibly modified the parenting plan governing the parties and whether its findings of fact were supported by substantial evidence. We conclude that Jessica's appeal is not frivolous, and deny Brian's request for attorney fees on this basis.

Brian states in the header for this section of his brief that he is entitled to an award of his appellate attorney fees as the prevailing party on appeal. But Brian does not provide further argument or cite to legal authority in support of this claim. We decline to grant Brian his attorney fees on appeal as the prevailing party. RAP 10.3(a)(6).

27

Affirmed.[35]

_Trickey, J. P. J._

WE CONCUR:

_Mann, ACJ_                          _Schindler, J_

---

[35] On April 18, 2018, following oral argument, this court received a letter from Brian challenging factual assertions made by Jessica during oral argument. Jessica filed a response asking this court to not consider the contents of the letter and requesting sanctions against Brian for violation of the Rules of Appellate Procedure. We did not consider the contents of the April 18 letter when reaching our decision in this opinion, and deny Jessica's request for sanctions.