**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JOSE VELAZQUEZ,<br><br>      Appellant,<br><br>  v.<br><br>BERTHA G. VELAZQUEZ,<br><br>      Respondent. | No. 55191-8-II<br><br><br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — Jose Velazquez and Bertha (Velazquez) Alcantar-Lizarraga[1] were married in 1993. Bertha[2] has health problems and has not worked in years, while Jose often worked several jobs to support their family. Jose filed for divorce in 2019 and appeals the portion of an order that requires him to make permanent maintenance payments of $1,800 per month to Bertha. Jose argues that the trial court erred by (1) not accurately considering Bertha's financial resources and (2) finding that Jose has the ability to make the permanent maintenance payments.

We hold that the trial court did not err in its assessment of Bertha's financial resources or by finding that Jose has the ability to make the spousal maintenance payments because the trial

---

[1] In the final divorce order, Bertha's last name is noted as Alcantar-Lizarraga. However, the court record for this case uses her former last name, Velazquez, because that was her name when the case was initiated.

[2] For clarity, we refer to the parties by their first names. No disrespect is intended.

court's findings were supported by substantial evidence. Accordingly, we affirm the trial court's award of spousal support to Bertha.

FACTS

Jose and Bertha got married in Tacoma in 1993. Throughout their marriage, Jose worked at least two jobs at a time and worked overtime to provide for their family. Bertha last worked in 2002 or 2003. She is considered to be a person with a disability due to the physical and mental health conditions that she experiences.

Jose filed for divorce in July 2019. Prior to any maintenance award, both parties filed financial declarations with the court. These declarations required the parties to list "liquid assets, like cash, stocks, bonds, that can easily be cashed," separating out categories for financial accounts and other liquid assets. Ex. 7 at 3-4 (boldface omitted). Bertha's financial declaration, dated December 3, 2019, listed that she had $900 in available assets, which came from "[c]ash on hand and money in all checking & savings accounts." *Id.* at 3. The court issued a temporary order in January 2020, which required Jose to provide $2,600 per month in spousal maintenance to Bertha in addition to paying for her car insurance.

Jose amended his financial declaration on April 29, 2020 to reflect that he had lost one of his two jobs due to the COVID-19 pandemic. The amended declaration listed Jose's net monthly income as $3,638.57 per month including overtime. On April 30, 2020, the court issued another temporary order that reduced maintenance payments to Bertha to $1,800 per month. This temporary order also stated that Bertha "shall either seek employment or apply for [Social Security disability] benefits." Ex. 17 at 3. Bertha had previously applied for Social Security disability benefits in September 2019 and was denied because she had more than $2,000 in resources. The

Social Security Administration defined a "resource" as "money and anything that you own and can turn into cash." Ex. 13.

At trial, the main issue was the amount of maintenance the court should award. At the time, Jose was still working one job as a forklift operator and was making $625 per week after taxes. During his testimony, he did not express any safety concerns regarding his work. He explained that he works overtime when it is available, but the availability of overtime varies. Generally, he works eight hours of overtime per week at $30 per hour. The trial court was "persuaded" that Jose could afford spousal maintenance in the amount of $1,800 per month because overtime was available at his current job. Verbatim Report of Proceedings (VRP) at 56. The court found "that Mr. Velazquez is certainly capable of making more money. Historically he has, but he is not doing it at this point through no fault of his own." *Id.* The trial court also explained that Bertha cannot go back to work, "even on a part-time basis," due to her medical issues, her age, English not being her first language, and the fact that she has not worked since 2002 or 2003. *Id.* at 54.

Jose pushed back on the court's ruling, stating, "as far as my ability to have and hold two jobs at this time in life, I mean, I could, and I have historically, but I'm 61 years old now." *Id.* at 57. Jose then explained that, if he had to work two jobs, his lack of sleep could be dangerous to other people because he drives a forklift. The trial court clarified that it "did not take into account [Jose's] ability to work a second job. Instead, what [it] took into account was [his] historic income based on the fact that [he] generally work[s] overtime at [his] primary vocation." *Id.* at 58. The court made its August 2020 order reviewable within two years, with updated financial information from the parties, "[d]ue to Covid-19 and its effects on earnings." Clerk's Papers (CP) at 93.

3

No. 55191-8-II

Jose appeals the court's spousal maintenance order.[3]

SPOUSAL MAINTENANCE AWARD

A. LEGAL PRINCIPLES

Trial courts exercise broad discretionary powers when awarding spousal maintenance. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). RCW 26.09.090(1) provides a list of nonexclusive factors that the trial court must consider, including:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> (c) The standard of living established during the marriage or domestic partnership;
>
> (d) The duration of the marriage or domestic partnership;
>
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
>
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

We review an award of maintenance for abuse of discretion. *In re Marriage of Anthony*, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Id.* at 563.

Where the trial court has weighed the evidence, our role on review is to determine whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings

---

[3] Bertha did not file a response brief.

support the conclusions of law. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). " 'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " *Id.* (internal quotation marks omitted) (quoting *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002)). We do " 'not substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.' " *Id.* (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)). If the trial court's decision is based on "factual findings [that] are unsupported by the record," the trial court has abused its discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

B. ANALYSIS[4]

*1. Bertha's Financial Resources*

Bertha filed for Social Security disability benefits in September 2019, but she was denied benefits because she had more than $2,000 in resources. Her financial declaration, from December 2019, listed that she had $900 in available assets. Jose appears to argue that Bertha's resources have diminished since the time that she last applied for disability benefits and that she should continue to pursue Social Security benefits as a means of income. Jose claims that the trial court abused its discretion in finding that Bertha has no available financial resources because she has not "diligently sought" disability benefits. Br. of Appellant at 25. We disagree.

---

[4] Jose does not assign error to the relevant findings of fact made by the trial court in rendering its decision. However, under RAP 1.2, "appellate review has been granted where proper assignment of error is lacking but the nature of the challenge is clear and the challenged finding is set forth in the party's brief." *Fuller v. Emp't Sec. Dept*, 52 Wn. App. 603, 605, 762 P.2d 367 (1988). Therefore, this opinion assumes that he did assign error to the relevant findings, which are reviewed for substantial evidence. *See Rockwell*, 141 Wn. App. at 242.

The trial court did not make a finding that Bertha has no available financial resources; the court simply found that she is unable to work. This finding is supported by substantial evidence. The court considered Bertha's medical issues, her age, English not being her first language, and the fact that she has not worked since 2002 or 2003. This is enough " 'to persuade a fair-minded, rational person of the truth of the declared premise.' " *Rockwell*, 141 Wn. App. at 242 (internal quotation marks omitted) (quoting *Griswold*, 112 Wn. App. at 339). Further, this finding supports the trial court's conclusion that Bertha is in need of financial assistance.[5]

We hold that the trial court did not abuse its discretion in assessing Bertha's financial resources under RCW 26.09.090(1)(a).

*2. Jose's Ability to Make Maintenance Payments*

Jose next argues that the trial court erred by disregarding his age and the nature of his work in its determination that he is able to pay Bertha $1,800 per month. We disagree.

As an initial matter, the trial court did not make a finding of fact regarding Jose's age. Furthermore, the record contains conflicting information about how old Jose is. *Compare* VRP at 57 ("I'm 61 years old now.") *with* CP at 27 ("Petitioner is ten years younger than me"), 51 ("I am 50 years old"), 54 (born in 1969), 83 (born in 1969). Therefore, we cannot consider Jose's age in reviewing the trial court's finding that Jose had the ability to make maintenance payments.

In addition, to the extent that Jose's argument is predicated on the nature of his employment as a forklift operator, Jose did not express any safety concerns regarding the nature of his work until after the court's oral ruling. And these safety concerns were coupled with the idea that he

---

[5] Contrary to Jose's assertions, the letter from the Social Security Administration denying Bertha's application for benefits also supports this conclusion because it shows that Social Security was not an available resource for Bertha.

may have to work a second job: "in order to pull off the two jobs, I sleep very little, sometimes only two hours to be able to have those two jobs. While I'm doing that, then I would put other people in danger, people at where I work because I drive a forklift." VRP at 57-58. The trial court clarified that it "did not take into account [Jose's] ability to work a second job. Instead, what [it] took into account was [his] historic income based on the fact that [he] generally work[s] overtime at [his] primary vocation." *Id.* at 58.

It was proper for the court to look at Jose's historic earning patterns, as his ability to meet both his own needs and Bertha's needs is a factor for the court to consider in awarding maintenance. RCW 26.09.090(1)(f). In Jose's amended financial declaration, submitted to the court a couple of months before trial, he indicated that his net monthly income was $3,638.57. His testimony at trial was generally consistent with this figure, where he indicated that he made $625 weekly after taxes and worked eight hours of overtime per week at $30 per hour, although the availability of overtime varied due to the pandemic. Based on this testimony, the trial court found that Jose could afford spousal maintenance in the amount of $1,800 per month because overtime was available to him at his current job.

The trial court properly weighed the relevant factors under RCW 26.09.090(1), and it found that Jose had the ability to make payments. This finding was supported by substantial evidence.[6]

---

[6] Notably, "[d]ue to Covid-19 and its effects on earnings," the trial court made its order reviewable within two years, with updated financial information from the parties. CP at 93. In his brief, Jose acknowledged the reviewability of the order and said that he "may move, and inevitably, will have to move for modification of the instant order, under RCW 26.09.170, at the date when he is unable to continue working at the pace mandated by the court." Br. of Appellant at 26. Therefore, if Jose is now unable to make the payments as ordered due to a lack of available overtime or other change in employment circumstance, he may bring that issue before the trial court. But that information is not before us.

No. 55191-8-II

We hold that the trial court did not abuse its discretion in finding that Jose could pay $1,800 per month to Bertha.

CONCLUSION

We hold that the trial court did not err in its assessment of Bertha's financial resources or by finding that Jose has the ability to make spousal maintenance payments to Bertha because the trial court's findings were supported by substantial evidence. Accordingly, we affirm the trial court's award of spousal support to Bertha.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.

8