IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RELL'S FIRE PROTECTION GROUP, INC., a Washington corporation, | ) ) ) | No. 38626-1-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| THE ROCK TOP LLC, a Washington limited liability company; M & J HAMILTON, LLC, a Washington limited liability company; and HAMILTON-PRICE, INC., a Washington corporation, d/b/a MICHAELS ON THE LAKE, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) | |

LAWRENCE-BERREY, J. — This case stems from two contract disputes between Rell's Fire Protection Group, Inc. (RFP), appellant, and The Rock Top LLC (Rock Top) and Hamilton-Price, Inc., doing business as Michaels on the Lake (Michaels), respondents. By motion practice, jury trial, and a later bench trial, both sides successfully defended against the others' claims for affirmative relief, and the trial court denied each side's request for attorney fees.

RFP appeals the result of the bench trial, including the denial of its reasonable

attorney fees.  Michaels and Rock Top cross appeal the denial of their reasonable attorney

fees.  We affirm the trial court's determination that RFP failed to prove that any of the

eight disputed invoices for additional extras were proper, but reverse its denial of

Michaels' and Rock Top's fee requests.

FACTS

*Parties*

Travis Smith (Travis[1]) and his son, Dewayne Smith (Dewayne), own and operate

RFP.  RFP sells, leases, installs, and services fire suppression equipment.  Michael

Hamilton (Mike) and his son, Jordan Hamilton (Jordan), own and operate restaurants

located in Moses Lake, Washington, including Michaels and Rock Top.

*Summary of facts relevant to the bench trial*

This appeal arises from two contract disputes.  The first is a lease agreement

between RFP and Michaels for fire suppression equipment.  The second is for RFP to

install a gas line and an exhaust hood system for Rock Top, a new restaurant.  The

contracts create a secured interest in favor of RFP for all goods sold or leased, and

---

[1] Because the fathers and sons share last names, we refer to the individuals by their first names.  We intend no disrespect.

requires the debtor to pay RFP's reasonable attorney fees in the event the debt is referred

to an attorney for collection.

The Michaels Lease. In 2006, RFP entered into a lease agreement with Michaels

for a fire suppression system. The agreement was that RFP would lease equipment to

Michaels for $450 per year. RFP listed the equipment's replacement cost at $2,750 as of

February 20, 2006, and the lease was for a period of five years with an option to renew

for another five years. Every year, around February, RFP sent an invoice to Michaels for

the leased equipment and Michaels would send payment.

The Lease Equipment Agreement provided in relevant part:

> [A]ll service work shall be [performed] by [RFP]. . . . [S]hould the lease
> agreement be violated in any way by the Leasee it will be the sole decision
> of [RFP] to accept or decline return of its leased equipment or demand
> payment at *current market value at the time of violation* . . . .

Clerk's Papers (CP) at 328.

In February 2013, RFP serviced the leased equipment at Michaels and billed

Michaels for the service work in addition to the yearly lease fee. Michaels had not made

a payment on its account since January 10, 2013. Around May 2013, the business

relationship between the two father and son teams began to fracture due to disputes

involving the Rock Top project.

3

As of May 23, 2013, RFP claimed Michaels still owed $1,313.62. However, due to nonpayment, Travis terminated the Michaels lease on May 25, 2013, and stated the equipment would be removed by an authorized subcontractor. Travis learned that Jordan had disposed of the leased equipment. When he learned of this, he invoiced Michaels $5,800, which he claimed was the market value of the equipment at the time Michaels breached the lease.

At trial, RFP contended that the equipment had increased from its 2006 assigned value of $2,750 because Mike had the system serviced semi-annually and had upgrades installed. On cross-examination, Travis testified about performing the maintenance and doing the upgrades on the leased equipment at Michaels. He stated he would send the invoices for that work to Michaels on the completion of the work. However, when pressed by counsel, Travis testified those records were at his office. He never supplied those invoices throughout the entire litigation.

In a declaration, Jordan stated that the equipment was seven years old at the time he disposed of it, and it would have been worth considerably less than $2,750.

Nevertheless, in early March 2014, Michaels tendered $2,750, in addition to other amounts, to RFP.[2]

      The Rock Top Contract.  In late 2012, Mike and Jordan decided to renovate the old Golden Corral restaurant, which would later become Rock Top.  In anticipation of the project, Rock Top hired RFP to install a gas line.  In December of that year, Mike and Jordan met with Dewayne to discuss hiring RFP to install a new exhaust hood system in the restaurant.  RFP agreed to do the work; the original bid price for the project was $26,435.50, including tax.  RFP began work that month.  Dewayne installed the exhaust hood as well as some extras for Rock Top.  All work was completed by the end of March 2013.

      The parties agree that RFP performed extra work at the Rock Top project.  The original work and agreed-upon extras are memorialized in the record as follows:

---

[2] The amount tendered in early March 2014 was $6,372.50, which represented $2,750.00 from Michaels for the equipment and $3,622.50 from Rock Top for nine months of interest on $23,000.00.  RFP cashed the check on April 4, 2014.

| Work Order # | Work Description | Invoice # | Charge | Record Cites |
|---|---|---|---|---|
| 16226 | • 1 – 1 ½" Gas Line Install<br>• 6 – Rolls of Pipe Wrap<br>• 14 – hrs labor | 36483 | $2,561.07 (Paid on December 18, 2012) | Ex. 51; CP 312, 1187; RP1 1782. |
| 16845 (Rock Top Bid) | • 1 – Exhaust Hood System Class<br>• 2 – Canopy Hood S/S 10' lights w/ makeup air<br>• 2 – Exhaust fans Upblast 3200 Cfm 16"<br>• 1 – Make Up Air fan 6000 Cfm 18"<br>• 1 – Wall Pad S/S 20' x 8'<br>• 2 Exhaust Duct System w/ Duct Wrap<br>• 4 – Fire Damper<br>• 3 – Fan Roof Curb<br>• 1 – Ansul fire system UL 300<br>• 1 – Ansul Gas Valve 1 ½"<br>• 1 – Extinguisher (wet chem) A260<br>• 3 – Extinguisher (dry chem) A500 | 37003 | $26,435.50 | Ex 3; CP 687, 901, 922, 960, 993, 1094, 1096; RP1 1778, 1895. |
| 16925 | • 1 - Gas line "meter to under ground"<br>• 1 – double stack oven hook up<br>• 1 – Salamander re-fab gas line<br>• 1 – 14 [ ] S.S. Salamander mount install<br>• 2 – outside fire place hook up<br>• 1 – outside overhead heater hook up<br>• 1 – outside overhead S.S. dormant 1/2" line<br>• 1 – A260 wet chem kitchen ext recharge<br>• 3 – New A200 Abc 5 lb Ext | 37100 | $3,346.52 (*original charge*)<br><br>$3,013.11 (*charge after fire extinguishers removed*) | Ex. 20; CP 30, 61, 168, 295, 371, 677, 861, 928-29, 962, 995; RP1 1780-81, 1783-86, 1895. |

| Missing Work Order | • 1 – Serve Window S/S Liner<br>• 1 – Wall End Cap S/S | 37101 | $566.48 | Ex. 21; CP 31, 62, 169, 862, 923, 963, 996; RP1 1780-81, 1788-89, 1895. |
|---|---|---|---|---|
| N/A | • Accrued Interest | 37095 | $528.69 *(later removed)* | Ex. 94 |
| N/A | • Accrued Interest | 37155 | $449.40 *(not billed until May 25, 2013)* | CP 20, 32, 63 |

In early March 2013, Michaels and Rock Top each received a notice from the

Department of Labor and Industries (L&I). The notices stated that RFP owed taxes

totaling $23,783.53 and directed each company to pay whatever it owed RFP directly to

L&I. Over the next several weeks, the parties worked with L&I to ensure that whatever

payment Michaels and Rock Top made was appropriate.

On April 30, Rock Top received an invoice from RFP. It indicated that Rock

Top's account was past due and immediate payment was required. The total amount due

was $30,877.19. The total reflected on the statement was calculated as follows:

> Balance forward $26,435.50 (Original bid)
> Invoice #37100 (Due on April 1, 2013) $3,346.52 (Agreed upon extras)
> Invoice #37101 (Due on April 1, 2013) $566.48 (Finance charge)
> Invoice #37095 (Due April 25, 2013) $528.69 (Finance charge)
> **Total** **$30,877.19**

7

CP at 335.

On May 24, the parties reached an agreement and Michaels and Rock Top paid $8,407.28 to RFP. This amount was what Rock Top owed on the original contract price, plus the agreed extras, plus the amount owed by Michaels, plus interest, but less the amount L&I claimed RFP owed it. Mike and Jordan then went to the L&I office with the intent to pay $23,783.53 to L&I but were advised by that office not to pay it at that time.

On June 6, 2013, more than two months after it completed its work, RFP issued a new bill to Rock Top. The new bill, comprised of successive invoices from 37158 through 37165, reflected $11,051.13 in additional extra charges.[3]

On June 10, 2013, Michaels and Rock Top calculated the amount they owed RFP. The calculation came to $22,945.84 and included everything except the disputed additional extra charges. Rock Top tendered this amount to RFP, conditioned upon a full release, but RFP refused to accept it.

One month later, RFP filed this action. Soon after, Michaels and Rock Top deposited $23,000.00 into the court registry. In January 2014, RFP withdrew the

---

[3] The work orders and the invoices bore a higher number than the work orders and invoices for the agreed work, meaning they were later created. The trial court would later find: "Clearly, Travis and/or Dewayne created these additional work orders and invoices after the fact to increase the amount of their claim." CP at 1509.

$23,000.00 and deposited the check in its own account.  As noted previously, in early

March 2014, Rock Top paid RFP $3,622.50 for nine months of interest on the

$23,000.00.

*Claims and Procedure*

An understanding of the claims, counterclaims, affirmative defenses, and case

procedure is necessary to resolve the parties' competing claims for reasonable attorney

fees.

In July 2013, RFP sued Michaels and Rock Top.  Its complaint asserted the

following theories: replevin, conversion, breach of contract, quantum meruit, and unjust

enrichment.  Michaels and Rock Top answered by denying RFP's right to relief and

asserted counterclaims that RFP wrongfully removed fans from Rock Top's roof and

performed construction work without a contractor's license, which is a violation of the

Consumer Protection Act (CPA), chapter 19.86 RCW.

Later in 2013, RFP brought a motion for partial summary judgment.  Although our

record of this motion is incomplete, a court order shows that RFP prevailed, which

resulted in dismissal of the respondents' two counterclaims and an award of reasonable

attorney fees of $7,712.  Judgment was subsequently entered for this amount.

RFP later filed an amended complaint adding a claim for equitable indemnity. Michaels and Rock Top answered by denying RFP's claims and raised numerous affirmative defenses (failure to comply with the contractor registration statute, duress, estoppel, fraud, failure to mitigate, frivolous complaint, illegality, lack of consideration, accord and satisfaction, statute of frauds) and counterclaims (failure to comply with the contractor registration statute, abuse of process, malicious prosecution, fraud, and trespass). In their pleading, Michaels and Rock Top affirmatively requested return of the $31,000 they paid RFP, over $30,000 in business damages, and attorney fees.

During the first trial of this matter, which was before a jury, respondents' attorney recognized that its counterclaims and almost all of its affirmative defenses were based on its claim that an unregistered contractor—Rell's Fire Protection Group, Inc.—was the contracting party for both disputes. The attorneys then entered into an agreement to submit a narrow question to the jury: whether Rell Fire Protection, Inc. or Rell's Fire Protection Group, Inc. was the contracting party. The parties stipulated that if the jury verdict determined that Rell Fire Protection, Inc. was the contracting party, then all of the respondents' counterclaims and affirmative defenses, except payment and accord and

satisfaction, would be dismissed.[4]  In addition, the parties waived their right to have a jury decide all remaining issues.

After a trial that spanned one week, the jury found that the contracting party was Rell Fire Protection, Inc.  In accordance with the parties' stipulation and waiver, the trial court entered judgment on the verdict and dismissed the respondents' counterclaims and all but two of its affirmative defenses.  Three years later, the parties tried the remainder of their claims to the bench, which is the subject of this appeal.

*Bench Trial*

Because Michaels and Rock Top had tendered $23,000 to the court registry early in the lawsuit and this amount included everything except the value of the equipment leased by Michaels and the additional extra charges, the focal points of the bench trial were the 2013 market value of the leased equipment and what, if any, of the additional extra charges were proper.

With respect to RFP's claim against Michaels, the trial court apparently did not believe Travis's testimony that he made upgrades to the leased equipment.  The court found that the equipment, originally valued at $2,750, had depreciated in the seven years

---

[4] Apparently, Rell Fire Protection, Inc. was a registered contractor.

Michaels had used it, and the equipment's market value in 2014 was "less than $1,000."

CP at 1494.

With respect to RFP's claim against Rock Top, the trial court found that RFP had

failed to establish that any of the additional extra charges were proper. In detailed

findings of fact, the court explained why the work reflected in each of the eight

challenged invoices was for work that was part of the original contract, or part of the

agreed extras, or was otherwise was not a valid charge.

In addition, the trial court noted that Rock Top's March 2014 check included two

months of interest after RFP cashed the $23,000 court registry check, and found, "When

[RFP] cashed this additional check it had been **overpaid** $1,222.54. As of April 4, 2014

[RFP] had been paid all that was due under the contract and had been paid in full."

CP at 1514.[5]

In its initial findings of fact and conclusions of law, the trial court found that

Michaels and Rock Top were the prevailing parties and were entitled to their reasonable

attorney fees. It later waivered in this determination. In the court's order denying RFP's

motion for reconsideration, the court included a handwritten note at the bottom, which

---

[5] Actually, RFP was overpaid more than $1,222.54. Michaels paid $2,750.00 for the depreciated leased equipment, which was at least $1,750.00 more than its then current market value. So more correctly, RFP was overpaid nearly $3,000.00.

12

stated, "The question of attorney fees of each party is reserved until further motion."

CP at 1623.

On November 2, 2021, Rock Top and Michaels filed a motion for an award of

attorney fees and costs. They argued that they had prevailed in the bench trial and that

RCW 4.84.330 made the attorney fee provision reciprocal.

RFP filed a motion for reconsideration and a motion for attorney fees and costs.

Its request for attorney fees was based on the fact it prevailed in the jury trial and

anticipated it would obtain affirmative relief after the court ruled on its reconsideration

motion.

The trial court heard argument on the competing motions for attorney fees. At the

conclusion of the hearing, the court orally ruled:

> I think there's a lot of common ground here. It's clear that this was
> obviously [a] protracted, complicated litigation in which each party
> recovered on a substantial theory. On that basis—and I want to add, also,
> when I go through the billing here, I think it's very difficult to segregate
> this out between one claim and another.
>     I'm going to follow the holding in *Rowe* [*v. Floyd*, 29 Wn. App. 532,
> 629 P.2d 925 (1981)], which I think is binding upon the court, that was
> reaffirmed in *Hertz vs. Riebe*, [86 Wn. App. 102, 105, 936 P.2d 24 (1997),]
> and I'm going to find that both parties recovered on substantial theories and
> that therefore neither are prevailing for purposes of award of attorney's
> fees.

Rep. of Proc. (Nov. 10, 2021) at 2117-18.

The court issued its order on attorney fees and costs one month later. The court's

order states:

> [RFP] obtained a final judgment on the verdict (JOV) in its favor on
> February 16, 2018, dismissing with prejudice all six (6) of [Michaels and
> Rock Top's] counterclaims against [it]. [Rock Top and Michaels] obtained
> a final judgment in their favor on March 19, 2021, dismissing with
> prejudice all [of RFP's] claims against them. No party prevailed on its own
> claims or counterclaims. The claims and counterclaims, all of which were
> successfully defended, had raised major issues. There is no substantially
> prevailing party. Accordingly, no party should be awarded reasonable
> attorney fees or costs.

CP at 1951-52. RFP filed a timely appeal, and Michaels and Rock Top filed a timely

cross appeal.

## ANALYSIS

RFP has not assigned error to any of the trial court's findings of fact. Rather, it

phrases the issues as questions of law, which we review de novo. *Young v. Toyota Motor

Sales, U.S.A.*, 196 Wn.2d 310, 317, 472 P.3d 990 (2020). We discuss each of RFP's legal

challenges below.

1.      *Did the trial court commit reversible error by concluding that RFP failed to
        establish the value of the equipment it leased to Michaels?*

RFP argues the trial court committed reversible error by valuing the leased

equipment at $0 instead of within the range testified to by the parties, from $2,750 to

$6,200. We note that the trial court did not find that the equipment's value was $0.

14

In finding of fact 72, the court found:

The equipment that was subject to the lease with Michael's had an agreed market value of $2,750 as of February 20, 2006. It has not increased in valued over time; as of March 5, 2014, its value was substantially less than $2,750.

CP at 1515. In finding of fact 11, the trial court found: "The actual . . . market value of the depreciated equipment as of March 5, 2014 was less than $1,000.00." CP at 1494.

RFP raises three arguments that we consolidate into two. First, citing *In re Marriage of Rockwell*, 141 Wn. App. 235, 250, 170 P.3d 572 (2007), it argues a court may adopt the value asserted by either party or any value in between. It then asserts that Travis testified that the value of the equipment was $6,200, while Michaels valued the equipment at $2,750. We note that no witness for Michaels testified that the value of the equipment was $2,750. Rather, in a declaration, Jordan testified that when RFP terminated the lease, the equipment was worth "considerably less than [$2,750]." CP at 310.

Next, citing authorities that require a trial court's award to be within the range of the evidence, it asserts that the trial court's valuation of the equipment is reversible error because it is not supported by substantial evidence. Even if we disregard Jordan's declaration and agree with RFP, any error is harmless, given that Michaels paid RFP $2,750, and the trial court did not credit Michaels for any overpayment.

15

2.       *Did the trial court err by dismissing RFP's claim that Rock Top was
         unjustly enriched unless it paid for the additional extras or by denying RFP
         any recovery on the basis that its invoices were inadequate?*

RFP contends the trial court erred when it dismissed its unjust enrichment claim

for the additional extras on the basis that there was no agreement to pay. Similarly, it

argues the trial court erred by denying it a recovery for the additional extras on the basis

that its invoices were inadequate. Neither argument is factually correct.

The trial court carefully entered findings of fact for each of the eight disputed

invoices and concluded that the charge either was not authorized (findings 54, 55), was

duplicated (findings 56, 57), was de minimis and free (finding 55), was for work billed

separately (findings 58, 60, 63), was not performed (finding 61), or was free labor in

exchange for an item (finding 62). CP at 1509-13; *see also* conclusions of law 7-11

(explaining that RFP failed to prove that any of the additional extras were proper

charges). The trial court did not deny RFP's claim for additional extras for any lack of

agreement or inadequate documentation. Rather, it denied RFP's claim because it failed

to prove that any of the charges were proper.

3. *Did the trial court err by concluding that RFP's cashing of the court registry check constituted an accord and satisfaction of its claims against Michaels and Rock Top?*

RFP argues the trial court erred by concluding that an accord and satisfaction occurred when it cashed the court registry check of $23,000, which had earlier been tendered by Michaels and Rock Top as payment in full. Again, this argument is not factually correct.

It is true, in its letter decision, the trial court concluded that RFP's acceptance of the court registry check constituted an accord and satisfaction of the previous obligations. Nevertheless, this was not the basis of the trial court's formal decision embodied in its written findings of fact and conclusions of law.

In its findings, the trial court explained that after RFP cashed the $23,000.00 court registry check and the respondents' $6,372.50 check, the obligations owed to RFP had been "**overpaid** by $1,222.54." CP at 1514. The court found: "As of April 4, 2014 [RFP] had been paid all that was due . . . ." CP at 1514. Nowhere in the trial court's findings and conclusions does it refer to accord and satisfaction.

"Where there is a discrepancy between a memorandum decision and the findings of fact, the latter control." *In re Estate of Mayer*, 43 Wn.2d 258, 266, 260 P.2d 888 (1953). Because the trial court did not rely on accord and satisfaction in rendering its

17

formal decision, we need not decide whether the court misapplied that doctrine in its letter decision.

4. *Did the trial court err by denying each party its request for reasonable attorney fees?*

Both parties argue the trial court erred in denying their requests for attorney fees. Both agree that the only basis for an award of attorney fees is the clause in each of the two contracts authorizing RFP to recover reasonable attorney fees in the event collection of the debt is referred to an attorney. Both agree that RCW 4.84.330 makes the attorney fee clause bilateral, so that Michaels and Rock Top are entitled to recover reasonable attorney fees in the event they prevailed in the action.

Michaels and Rock Top argue that the jury trial concerned only its CPA (unregistered contractor) claim and a party who successfully defends against a CPA claim is not entitled to attorney fees. For this reason, they assert, RFP is not entitled to attorney fees for prevailing before the jury on the CPA claim. According to the respondents, we need only determine who prevailed at the bench trial to decide who is entitled to contractual attorney fees. We disagree.

The respondents' argument minimizes what was at stake in the jury trial. Had respondents prevailed, they would have owed RFP nothing because an unregistered contractor is not entitled to bring an action to recover amounts owed. RCW 18.27.080.

18

In essence, for RFP to prevail on its contractual claims, it had to prevail in the jury trial *and* the bench trial. We conclude that the attorney fees incurred by RFP in the jury trial were necessarily incurred for it to collect on its contracts and therefore could potentially be recoverable by RFP. But only if RFP prevailed. For the reasons given below, we conclude that RFP did not prevail.

We begin our discussion of prevailing party by focusing where the trial court did on *Hertz*.

In *Hertz*, the buyers entered into an earnest money agreement to buy an apartment building. 86 Wn. App. at 104. The buyers paid a $1,000 earnest money deposit and moved into the apartment building. *Id.* When they discovered that the sellers had misrepresented financial information, they sued for return of their earnest money deposit, for $525 in moving expenses, for the cost of the home inspection, and other costs. *Id.* The sellers counterclaimed for rent for the time the buyers lived in the apartment. *Id.*

The trial court ruled in favor of each of the parties on their respective claims, finding that the sellers were entitled to $1,000 for rent but that the buyers were entitled to the return of their $1,000 earnest money deposit. *Id.* at 104-05. The earnest money agreement provided for attorney fees and both parties requested them. *Id.* at 105. The

trial court concluded that because both parties had substantially prevailed on major issues, neither was entitled to an award of fees and costs. *Id.*

On appeal, the buyers argued that we should follow the proportionality rule adopted in *Marassi v. Lau*, 71 Wn. App. 912, 859 P.2d 605 (1993). The *Marassi* proportionality rule applies "when the alleged contract breaches at issue consist of several distinct and severable claims . . . ." *Id.* at 917. Under the proportionality rule, a trial court is tasked with segregating attorney fees based on the time spent on each successful claim and entering a net award. *Id.* In *Hertz*, we declined to apply the proportionality rule because each side recovered on a substantial theory, i.e., the dispute did not involve several distinct and severable claims as did the dispute in *Marassi*. *Hertz*, 86 Wn. App. at 106.

We believe this case resembles *Marassi* more than *Hertz*. Here, the trial court had to determine the 2013 market value of the equipment leased to Michaels and had to analyze each of the eight invoices that comprised RFP's additional extra charges to Rock Top. The trial court found that the value of the leased equipment was less than $1,000, the value conceded by Michaels and substantially less than RFP sought. In addition, the trial court found that RFP failed to prove that any of the additional extra charges it billed Rock Top were proper. Similar to *Marassi*, the trial court's decision required it to

analyze several distinct and severable contract claims. Michaels prevailed on its sole issue, and Rock Top prevailed on each of RFP's eight invoice claims.

We remand with directions for the trial court to award Michaels and Rock Top their reasonable attorney fees, excluding time spent on unsuccessful counterclaims and affirmative defenses.

ATTORNEY FEES ON APPEAL

Both parties request reasonable attorney fees on appeal and agree that the contracts permit the prevailing party on appeal to recover their reasonable attorney fees.

Here, the respondents have prevailed on appeal on all issues. Subject to their compliance with RAP 18.1, we grant their request for reasonable attorney fees.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                              Pennell, J.

21