[No. 56954-6-I.   Division One.   August 27, 2007.]

*In the Matter of the Marriage of* CARMEN P. ROCKWELL, *Respondent,* and PETER G. ROCKWELL, *Appellant.*

*Patricia S. Novotny*, for appellant.

*Cynthia B. Whitaker* (of *Law Offices of Cynthia B. Whitaker*) and *Catherine Wright Smith* (of *Edwards Sieh Smith & Goodfriend, PS*), for respondent.

¶1 Appelwick, C.J. — Peter Rockwell challenges the fairness of a 60/40 division of property in the dissolution of a long-term marriage. He argues the trial court improperly considered his future earning capacity as a factor in the overall fairness of the division. He claims the trial court erred in making an adjustment for Social Security benefits that his wife would have received but for her type of federal pension. Carmen Rockwell cross-appeals, arguing that the court erred when it chose the subtraction method to characterize and value her federal pension. We reverse the trial court's use of the subtraction method for pension characterization and valuation but affirm on all other issues and remand for further proceedings.

FACTS

¶2 Peter and Carmen Rockwell were married from 1978 until 2004, a total of 26 years. Carmen[1] had been employed in the federal civil service for 16 years prior to the marriage. During those 16 years, she took two breaks from this service, one for a period of about 14 months, and another for a period of just under 5 years. She continued in this field for 24 more years during their marriage. Peter has bachelor's degrees in mechanical engineering and liberal arts. He worked as an engineer in Washington, D.C., before seeking a position in technical sales. In order to advance Carmen's career, the couple moved to New York in 1984, and then to Seattle in 1986. Each time, Peter gave up his current employment and sought reemployment in their new location. In 1999, when Peter was 48, he was laid off. In his last year of employment, he had earned a $72,000 salary and a

---

[1] For purposes of maintaining the distinction between the parties, we will refer to them by their first names.

commission of about $18,000. He searched for employment in similar fields but without success, and stopped seeking employment after the spring of 2002.

¶3 Carmen retired in 2002 at age 60, testifying to health concerns that kept her from continuing her employment. She had advanced from a position as a "GS-3" clerk to a "GS-15" executive, for which she earned a $120,000 salary as the head of the Northwest Regional Office of Civil Rights. Because she was enrolled in the Civil Service Retirement System (CSRS), she earned a substantial pension that is in lieu of any Social Security benefits. This pension is now in "pay status."

¶4 In 2004, Carmen filed for dissolution of the marriage. At trial, the parties and their experts presented lengthy testimony regarding Carmen's career and health; Peter's career, job search, and health; the future possible income streams of both parties; the community debts; and the tangible assets available to each. The trial court received evidence on various real and personal properties, including the family home, Carmen's individual retirement account (IRA) and thrift savings plan, Peter's contributory and rollover IRA's, two automobiles, rental proceeds, life insurance policies, Peter's disability insurance policy, frequent flier miles, and Carmen's CSRS pension.

¶5 In its oral ruling issued on June 24, 2005,[2] the trial court stated that it was "back[ing] out the Social Security contribution assessment for—that Mr. Kessler provided, that's $159,464." This is the value of Social Security that Carmen would have received if she was not receiving her particular type of federal pension. The trial court "compensated" her for that amount in its written findings of fact.

---

[2] Because the findings are not clear as to how the court arrived at its conclusions, we rely on the trial court's oral opinion. *In re Marriage of Yates*, 17 Wn. App. 772, 565 P.2d 825 (1977) (an appellate court may use a trial judge's oral opinion to clarify formal findings with which the oral opinion is consistent); *cf. Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 838, 786 P.2d 285 (1990) (an oral opinion is not itself the judgment and cannot be used to impeach or contradict unambiguous written findings).

¶6 In addressing the division of the pension, the trial court noted Peter's entitlement to Social Security benefits and their potential to increase, Carmen's lack of Social Security benefits due to her type of pension, and Peter's inheritance funds that he gifted to the community. It accepted the "subtraction method" that Peter's actuary expert used to value Carmen's pension, finding that 92 percent of the pension was community property and 8 percent was Carmen's separate property. The trial court concluded that it was fair and equitable to divide the community property portion of the pension 60 percent to Carmen and 40 percent to Peter, and to award Carmen her separate property portion of the pension. This meant that Peter is to receive 36.8 percent of the gross value of the pension.

¶7 Both parties moved for reconsideration of the oral ruling, filing a motion and response to the same on July 26, 2005. There are no significant differences between what the parties raised in their motions for reconsideration and the issues raised on appeal. The trial court denied Peter's motion for reconsideration in its entirety. The trial court also denied Carmen's motion for reconsideration in its entirety.

¶8 The trial court issued its written findings of fact on August 26, 2005. Based on those findings, the trial court stated, "Given the difference in age, earning capacity, physical condition, and that husband had the ability to earn income and save for retirement in the future, it is fair and equitable to divide the community property 60 percent to wife and 40 percent to husband." It also ordered the family home to be sold in order to provide liquidity to both parties.

¶9 Neither party moved for reconsideration of the written findings of fact. Peter filed his notice of appeal on September 26, 2005. Carmen filed her notice of cross-appeal on October 4, 2005.

## ANALYSIS

I. *Standard of Review*

■ ■ ¶10 Appellate courts apply the substantial evidence standard of review to findings of fact made by the trial judge. *See* 3 WASH. STATE BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK § 65.4(1), at 65-9 (2d ed. 2006). As long as the findings of fact are supported by substantial evidence, they will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). " 'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law. *In re Marriage of Greene*, 97 Wn. App. 708, 986 P.2d 144 (1999). A court should "not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility." *Id.* at 714 (citing *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996)).

■ ■ ¶11 The trial court's distribution of property in a dissolution action is guided by statute, which requires it to consider multiple factors in reaching an equitable conclusion. These factors include (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080. In weighing these factors, the court must make a "just and equitable" distribution of the marital property. RCW 26.09.080. In doing so, the trial court has broad discretion in distributing the marital property, and its

decision will be reversed only if there is a manifest abuse of discretion. *Griswold*, 112 Wn. App. at 339 (citing *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992)). A manifest abuse of discretion occurs when the discretion was exercised on untenable grounds. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). If the decree results in a patent disparity in the parties' economic circumstances, a manifest abuse of discretion has occurred. *In re Marriage of Pea*, 17 Wn. App. 728, 731, 566 P.2d 212 (1977).

¶12 However, the court is not required to divide community property equally. *In re Marriage of White*, 105 Wn. App. 545, 549, 20 P.3d 481 (2001). In a long term marriage of 25 years or more, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives. 2 Wash. State Bar Ass'n, Family Law Desk Book § 32.3(3), at 32-17; *see also Sullivan v. Sullivan*, 52 Wash. 160, 164, 100 P. 321 (1909) (finding that "after a husband and wife have toiled on together for upwards of a quarter of a century in accumulating property, . . . the ultimate duty of the court is to make a fair and equitable division under all the circumstances"). The longer the marriage, the more likely a court will make a disproportionate distribution of the community property. Where one spouse is older, semiretired, and dealing with ill health, and the other spouse is employable, the court does not abuse its discretion in ordering an unequal division of community property. *In re Marriage of Schweitzer*, 81 Wn. App. 589, 915 P.2d 575 (1996).

## II. *Social Security Benefits*

¶13 Peter assigns error to the trial court's consideration of Carmen's Social Security benefits. First, he assigns error to the following finding of fact:

2.8.

> 13.e. Wife is not entitled to receive Social Security benefits as her pension is in lieu of Social Security benefits. The

present value of wife's social security benefits is $159,464. The court finds it is fair and equitable to compensate wife in this amount, since husband will receive social security benefits.

¶14 Mr. Kessler, Carmen's expert, testified that Carmen's type of federal pension is in lieu of Social Security. He valued the Social Security that she would have received at $159,404,[3] which was based on a recalculation of updated numbers. This amount was not challenged. He noted that Peter will receive Social Security benefits that will increase from cost-of-living adjustments every year. When asked whether it was reasonable for Carmen to ask the court to deduct the value of her Social Security benefits from the value of the pension for purposes of property division, he replied that it was necessary to ensure fairness:

> [I]f we were truly trying to have an apples-to-apples analysis, for instance, in the case of Mr. Rockwell who will receive Social Security benefits, we needed to put a value on the Social Security benefit and deduct it from the value of Ms. Rockwell's CSRS benefit that does not entitle her to Social Security benefits.

The evidence is sufficient to persuade a fair-minded, rational person that the value of Carmen's foregone Social Security, which would have been indivisible, separate property, was $159,404.

¶15 Next, Peter argues that the trial court improperly compensated Carmen for the fact that her federal pension is in lieu of Social Security. The law does not permit the court to value and distribute Social Security benefits. *In re Marriage of Zahm*, 138 Wn.2d 213, 219, 978 P.2d 498 (1999) (citing 42 U.S.C. § 407(a) of the Social Security Act and its interpretation under *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 590, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979)). In particular, the trial court cannot calculate a future value of those monies and award that value as a precise property offset as part of its property distribution. *Zahm*, 138 Wn.2d at 217. However, the possibility that one or both parties may receive Social Security benefits is a factor the court

---

[3] The record reflects a nominal discrepancy in the value of the Social Security benefits.

may consider in making its distribution of property. *Id.* " 'A trial court could not properly evaluate the economic circumstances of the spouses unless it could also consider the amount of Social Security benefits currently received.' " *Id.* at 223 (quoting *In re Marriage of Zahm*, 91 Wn. App. 78, 85, 955 P.2d 412 (1998)).

■■■ ¶16 Carmen's expert testified to the present value of the Social Security that *Carmen* would have received but is not entitled to draw due to the structure of her federal pension. The trial court "compensated" Carmen by reducing the community property portion of the pension by that amount and treating it as if it were Social Security. The fact that Peter would receive Social Security was confirmed, but its value was not considered. Neither the "in lieu of" portion of the pension nor Peter's Social Security were added to either parties' column for purposes of dividing the present assets. Once set aside, these amounts were excluded from the equation used by the court to determine a fair division of property. By doing this, the trial court did not value Peter's Social Security and offset it against other property, nor did it divide his Social Security benefit. That would have been error under *Zahm*. Rather, the trial court focused solely on *Carmen's* foregone, indivisible Social Security benefits and valued them for purposes of comparing her economic future against Peter's. But for the existence and structure of Carmen's federal pension, there would be no question that this was appropriate—the trial court's adjustment method simply removed both parties' Social Security benefits from the equation in order to put them on comparable footing prior to dividing the remaining assets. We do not read *Zahm* to preclude this calculation as a fair and proper means of considering Social Security or achieving overall fairness. We conclude that the challenged finding is supported by substantial evidence and that the trial court properly considered and compensated for the Social Security benefits that Carmen would have received, but for her federal pension.

III. *Husband's Earning Capacity*

¶17  Peter argues the trial court erred when it found that he was capable of earning a salary of at least $70,000 a year. To support this finding, the trial court relied on the following findings of fact:

2.20.

1. Husband is nine years younger than wife and in good health.

. . . .

3. Husband has two bachelor's degrees, significant experience and knowledge in a variety of areas and is capable of working and earning at least $70,000 gross per year.

¶18  Peter is, in fact, eight years and four months younger than Carmen. Carmen was born on September 19, 1942. Peter was born on January 25, 1951. While the record could be corrected to be this precise, we do not regard this rounding up as an error of fact. The court used the number only to consider the parties' ages. Precision in the number of days or weeks or months in such a consideration is not necessarily required.

¶19  Peter also argues that the trial court erred when it underestimated his age because its oral ruling stated that he would have seven more years of work until the age of 60. He contends that this results in an inaccurate valuation of his future earnings as a basis for the 60/40 split. We recognize that the trial court, in its oral ruling, stated, "And what I have done in terms of trying to look at the big picture is estimate incomes from him until he is at age 60, so I'm talking about seven years." However, by the end of trial in June 2005, Peter was 54.5 years old. He will be 60 years old on January 25, 2011. This results in 5.5 years of work at an estimated salary of $70,000, rather than 7 years. Peter argued this same issue to the trial court in his motion for reconsideration: "The court indicated that it determined that [Peter] would be able to earn $490,000 in future earnings between now and the time he is 60." Confronted

with this factual error, the trial court denied reconsideration. We can infer from this denial that the seven year period was the intended duration, as opposed to age 60 being the intended endpoint. We conclude that the implication in the findings of fact and rejection of Peter's motion for reconsideration is that the trial court estimated that Peter would retire at age 62. This would mean that Peter in fact had seven years in which to earn a $70,000 salary. There is no error.

¶20 In regard to his potential salary, Peter testified that he has bachelor's degrees in mechanical engineering and liberal arts. In 1999, when he was 48, he was laid off. In that last year of employment, he had earned a $72,000 salary and a commission of about $18,000. He testified that in pursuing another job, what he considered suitable for his age and experience was a sales job involving a great degree of technical experience, paying a minimum of $70,000. He also testified that during his two-year job search from 2000 until 2002, he looked only for jobs that would pay $70,000 and up. During his testimony, he described his lengthy but unsuccessful job search. He acknowledged that he may have a better chance of finding a position in technical sales if he mounted a nationwide job search. But he was not interested in jobs outside of the Seattle area due to concerns regarding his daughter's health at the time. He stopped seeking employment after the spring of 2002.

¶21 In December 2004, the court ordered Peter to again look for work. According to his testimony, he first pursued leads in technical sales but was discouraged by the lack of positive responses. He then considered becoming a math teacher but was again discouraged by the training required and the low pay scale, which would begin at $38,000 per year. He settled on becoming a real estate agent and joined a real estate firm in May 2005. At the time of trial in June 2005, he had not made any listings or sales, but had incurred business costs. After becoming a real estate agent, he inquired into one or two opportunities in technical sales but did not receive a job offer in that field. During his

testimony, he indicated that while his daughter is now an adult and lives in Bellingham, he would prefer to remain in the Seattle area, again due to her health concerns.

¶22 If a trial court's finding is within the range of the credible evidence, we defer. *In re Marriage of Sedlock*, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993). Here, the salaries to which Peter testified ranged from $38,000 as a teacher to about $90,000 in his last years of employment. While he may have had difficulty in securing a technical sales position with such a salary in Seattle, Peter has the training and experience to pursue such positions, as well as more recent training to sell real estate. Further, while we recognize his legitimate concerns for his daughter's health, he is not so constrained by those circumstances that he cannot look for jobs outside of Seattle. The trial court's finding is both within the range of credible evidence and supported by substantial evidence showing that Peter would be able to work and earn a salary of $70,000 per year.

¶23 Next, Peter argues that his future earning capacity should not have been considered in dividing the property. Future earning potential "is a substantial factor to be considered by the trial court in making a just and equitable property distribution." *In re Marriage of Hall*, 103 Wn.2d 236, 248, 692 P.2d 175 (1984). While Peter cites this case as prohibiting the consideration of future earning potential as a divisible asset, the *Hall* court only declined to offset future earning capacity as an asset against goodwill. *Id.* Instead, because a spouse has no property interest in the earning capacity of the other spouse, *Hall* only forbids treating earning capacity as a present asset, placing it among other community assets, and dividing it as property. *Kraft*, 119 Wn.2d at 448. Further, in considering a party's future earnings capacity, a trial court may consider the age, health, vocational training, and work history of the party. 2 WASHINGTON FAMILY LAW DESKBOOK § 32.3(4)(a), at 32-19.

¶24 As noted above, the trial court must put the parties in roughly equal financial positions for the rest of their lives. *See* 2 WASHINGTON FAMILY LAW DESKBOOK § 32.3(3), at

32-17. This requires considering the combination of the division of property and the expected income and earnings of the parties. And, where one spouse is older, semiretired, and dealing with ill health, and the other spouse is employable, the court does not abuse its discretion in ordering an unequal division of community property. *In re Marriage of Schweitzer*, 81 Wn. App. 589, 915 P.2d 575 (1996). Peter was younger, in good health, and employable at a substantial wage. Moreover, substantial evidence showed that Carmen was retired, older, and in poor health. Accordingly, the trial court did not abuse its discretion when it compared Peter's age, health, and employability (and, thereby, future earning capacity) against Carmen's as a basis for its 60/40 split of the community property.

¶25 Peter's final assignment of error in regard to his future earning capacity is based on the following finding of fact:

2.8.

13.f. Husband is entitled to receive Social Security benefits at this time of up to $1,888 (age 70) per month depending upon when he elects to begin receiving the benefit, which benefits will increase in the future from husband's employment. If he retires at age 62 his social security benefit would be $1,078 per month.

(Emphasis added.) By emphasizing the underlined language, Peter challenges only that his benefits will increase based on future employment, not the actual valuation of his benefits. But the appropriateness of imputing his income has already been established above. Further, because the value of his Social Security benefits has been set aside and is not part of the equation of equitable division, there is no possible error here.

IV. *Characterization of Federal Pension*

¶26 Peter asserts that the findings of fact regarding the community percentage of the federal pension is erroneous because the court committed a mathematical error.

2.8.

13.l. The court accepts the actuarial analysis of husband's expert Mr. Dallas and finds that the "subtraction method" of valuing the pension is the appropriate method. *Pursuant to that method the increase in the benefit during the marriage is $6,194 and therefore 92 [percent] of the retirement benefit is community property and 8 [percent] is separate property.*

. . . .

13.o. 40 percent of the community property portion of the pension equates to 36.8 percent of the gross value of the pension (calculated as follows: 40 percent of 92 percent).

(Emphasis added.)

¶27 Peter contends that the trial court should have characterized the pension as 93.2 percent community property and 6.8 percent separate property, rather than the 92/8 split that was used in the final order. Arguing that this is mathematical error, he is concerned that he will receive about $35 less per month than he should, resulting in a $8,400 shortfall over 20 years.

¶28 Peter submitted two exhibits in which his actuary estimated the community property portion of the pension. Exhibit 71 supported a 93.2/6.8 split. But Exhibit 76, prepared by Peter, supports a 91.8/8.2 split. The trial court orally accepted Peter's actuary's *assessment and valuation* of the pension for the purposes of its analysis of the 60/40 split. However, in the final order, it accepted a 92/8 split, which was proposed by Carmen.

¶29 As noted above, when the parties offer conflicting evidence in valuation, the court may adopt the value asserted by either party or any value in between the two. *Sedlock*, 69 Wn. App. at 491. The final split is within the range of evidence offered by both parties. Moreover, Peter argued this very point in his motion for reconsideration, which was rejected by the trial court. This rejection eliminates the possibility of an inadvertent choice or mere mathematical error in favor of the trial court's conscious

choice of a value within the range of evidence. We conclude that the trial court did not abuse its discretion when it stayed within the range of evidence offered by both parties. There was no mathematical error.

¶30 In her cross appeal, Carmen assigns error to the trial court's use of the subtraction method, rather than the time rule method, in characterizing her pension as 92 percent community property. She asserts that Washington cases have used only the time rule method, under which the proportion would be 60/40 in her favor. Peter counters that both methods result in the percentage formula that has been encouraged by Washington courts, but neither one has been definitively chosen over the other. Instead, he argues, courts have used the method that best applies to the circumstances of the case and creates the most equitable results. However, he does not cite to any Washington cases that explicitly approve of the subtraction rule method. Even the out-of-state cases he cites to support his "best application to the circumstances" argument *reject* the subtraction method. Similarly, the Washington cases cited by both Peter and Carmen have used a time rule method or a close variation thereof. *See, e.g., In re Marriage of Bulicek*, 59 Wn. App. 630, 636-37, 800 P.2d 394 (1990); *In re Marriage of Chavez*, 80 Wn. App. 432, 434, 436, 909 P.2d 314 (1996); *Greene*, 97 Wn. App. at 713 (noting that the time rule was the typical formula for apportioning a pension but approving the trial court's use of a "slightly different formula but [that] made the same basic calculation").

¶31 "Pension benefits constitute property rights in the nature of deferred compensation, even if benefits are not presently available." *Bulicek*, 59 Wn. App. at 636-37. If the pension was accumulated partly prior to marriage and partly after marriage, it is proportionately classified, with the portion acquired during marriage characterized as community property. *See In re Marriage of Landry*, 103 Wn.2d 807, 699 P.2d 214 (1985).

¶32 In deciding the distribution of property in a dissolution, the trial court has wide discretion. *Bulicek*, 59 Wn. App. at 636-37. Generally, the community share is

calculated by dividing the number of years of marriage (prior to separation) by the total number of years of service for which pension rights were earned and multiplying the results by the monthly benefit at retirement. *Id.* This is known as the "time rule method."

¶33 In *Bulicek*, the parties were married for 22 years before separation. The husband had continued to work after their dissolution. *Bulicek*, 59 Wn. App. at 631. The value of his monthly retirement benefits was to increase based on these postdissolution working years. The court used the time rule method to ensure that the wife would receive a certain percentage of the husband's retirement benefits, even though the monthly payout would increase after dissolution. *Id.* at 638. The court recognized that the husband's prospective increase in retirement benefits was based on the 22 years of community effort supporting his career, performance, and therefore past and future pay increases contributing to his benefit. *Id.* at 639. Emphasizing that the trial court has wide discretion in awarding property in a dissolution, this court upheld and encouraged the time rule method of dividing pension rights as a means of recognizing the community contribution to such increases. *Id.*

¶34 The time rule method was also recognized as "the correct formula to determine the community share" of the total pension credits earned by the retiree in 80 Wn. App. at 434, 436. There, the parties' marriage was dissolved in 1986, and the husband retired seven years later. *Chavez*, 80 Wn. App. at 434-35. Because he was a military pension recipient, after 20 years of service he would be entitled to 50 percent of his base salary, and his pension would increase by another 2.5 percent of his salary (i.e., "service credit") for each additional year of service after 20 years. *Id.* Due to his 30 years of service, he was entitled to a pension of 75 percent of his base salary. *Id.* He challenged the decree of dissolution, which had awarded the wife 50 percent of this pension, arguing that his salary at retirement should not be used to calculate the wife's share of the pension because

that salary was different from his salary at the time of divorce. *Id.* at 437. The court disagreed, citing *Bulicek*'s conclusion that benefits increase based on higher salaries made possible by the community effort, and concluded that "increases in pension benefits based on a retiree's higher salary at the time of *retirement* should be included in the community share." *Id.* (emphasis added). The court was careful to note however, that the wife's share of the pension should *not* be increased due to the additional "service credits" that the husband earned subsequent to the divorce. *Id.*

¶35 We draw on the above principles to conclude that the trial court erred when it approved the use of the subtraction rule to characterize Carmen's federal pension. If postdissolution pension increases are apportioned to make an equitable division, increases in pensions due to premarriage efforts should also be apportioned to make an equitable division. Like the court in *Bulicek*, we recognize that Carmen's salary increased substantially during the marriage. However, such increases would not have occurred but for her first 16 years with the federal government. Similar to the indivisible "service credits" in *Chavez*, increases due to her years of service *prior* to the marriage should not be divisible community property. The subtraction rule disproportionately undervalues those early years by freezing the value of Carmen's front-end contribution and disallowing the separate interest to benefit from any income increases that became possible only because of her earlier years of service. There is a sharp contrast between the subtraction method, which characterizes the pension as only 8 percent separate property and 92 percent community property, and the time rule method, which characterizes the pension as 38 percent separate property and 62 percent as community property. When the trial court's 60/40 division of the property is applied to the community property of the pension, using the time rule method means that Peter will receive 24.4 percent of the gross pension and Carmen will receive 74.6 percent of the gross pension. This division more

appropriately values Carmen's first 16 years of work for the federal government.

¶36 Washington cases have used only the time rule method, not the subtraction method. We conclude that the trial court erred when it used the subtraction method and reverse and remand with instructions to characterize Carmen's federal pension according to the time rule method.

¶37 Having concluded the pension was improperly characterized, we need not reach Peter's assignments of error relating to mathematical error in the percentages assigned to community and separate interests in the pension.

## V. *Overall Division of Property*

¶38 Peter challenges the overall division of the property. He challenges the following findings specifically:

2.8.

13.m. The court accepts the actuarial analysis of husband's expert and finds that although *husband is nine years younger than wife* and it is more likely than not that wife will predecease him . . . .

13.n. The court finds that it is fair and equitable to divide the community property portion of the pension 60 [percent] to wife and 40 [percent] to husband, and to award wife her separate property portion of the pension.

. . . .

2.20.

5. Given the difference in age, earning capacity and physical condition, and that husband had the ability to earn income and save for retirement in the future, it is fair and equitable to divide the community property 60 [percent] to wife and 40 to husband.

. . . .

8. The distribution of property and liabilities as stated herein and as set forth in the Decree is fair and equitable [repeated as a Conclusion of Law at 3.3.2].

Based on these alleged factual errors, Peter also assigns error to provisions 3.2, 3.3, 3.14.1, and 3.14.2 in the decree of dissolution which divide the property.

¶39 Altogether, the trial court concluded that "the basics of the ruling are a 60/40 split," based on the difference in age, earning capacity, physical condition, and that Peter has the ability to earn income and save for retirement in the future. The "trial court has broad discretion in distributing the marital property, and its decision will be reversed only if there is a manifest abuse of discretion." *Griswold*, 112 Wn. App. at 339. In light of the discretion afforded to the trial court in determining what will be a fair and equitable distribution, and the factors that it can appropriately consider, we conclude that there was no abuse of discretion in making this final distribution. Absent the error in characterizing the federal pension, we affirm the trial court's division of the property as fair and equitable.

VI. *Attorney Fees*

¶40 Both parties assert the right to attorney fees on appeal under RCW 26.09.140 and RAP 18.1. We award Carmen attorney fees and costs subject to the provisions of RCW 26.09.140 and RAP 18.1.

¶41 We reverse the trial court's characterization of Carmen's federal pension and affirm on the other issues appealed. We remand for further proceedings consistent with this opinion.

GROSSE and DWYER, JJ., concur.

Review denied at 163 Wn.2d 1055 (2008).