IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOLINDA MCGARVEY, | No. 85774-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| ROBERT D. LINDEN, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — Robert Dean Linden appeals the division of property and the award of maintenance and attorney fees following the dissolution of his marriage to Jolinda McGarvey. He argues that the court erred in valuing certain assets and, as a result, the division of their marital estate was not just and equitable. He also challenges the determination of his income and the award to McGarvey of maintenance and attorney fees. We conclude that the court erred by double-counting properties owned by Linden's business, as well as in assigning a value to the marital home. We therefore remand to the trial court to correct those errors and determine a just and equitable division of the marital estate.

FACTS

Dean Linden and Jolinda McGarvey were married May 26, 2000, in Missoula, Montana, and moved to the Seattle, Washington, area around 2009. They separated March 30, 2021, at which time both parties were 53 years old. McGarvey remained in the family home in Clyde Hill, Washington, while Linden

resided mostly in Canada. The parties have two adult children, who were aged 18 and 20 at the time of trial.

During the marriage, Linden pursued various business ventures. In 2015, he and Kelly Klatik formed Cypress Hills Partners ("CHP Inc."), a Canadian investment services firm. Generally, the business and its related subsidiaries have been successful, with Linden earning between $200,000 and $350,000 or more each year since 2018. McGarvey was "a stay-at-home mom for the entirety of [the] marriage," raising their two children. She has not had a regular job since 1999, but she has produced clay artwork for decades as a hobby and generated some income from selling her work, with an average net of $35,501.25 per year from 2018-2021.

Approximately seven months after the separation, McGarvey filed a motion requesting a temporary order that Linden pay $16,000 per month in family support pending trial. In response, Linden asserted the amount of income on their tax returns incorrectly reflected an inflated "take-home" amount of money, as the increase in dividend payouts was for the purpose of "pay[ing] down the inter-company loan."[1] He argued his take home pay was only $10,000[2] per month, after currency exchange and taxes. A superior court commissioner

---

[1] In 2019, Linden and Klatik purchased commercial office property through a sub-entity they established, Cypress Hills Properties. To facilitate the purchase, Cypress Hills Properties borrowed the money for the down payment from CHP Inc. Linden claims that to offset the tax consequences of this inter-company loan, CHP Inc. paid extraordinary dividends to himself and Klatik, which they have reinvested into CHP Properties so it could repay its loan to CHP Inc. He contends these extraordinary dividends should not count as income—although they do on tax returns—because he never receives or has any control over the money; instead, he receives an increase in equity of the CHP Properties as it pays off the loan.

[2] Unless otherwise indicated as Canadian dollars, the stated amounts are in U.S. dollars.

granted McGarvey's motion in part, awarding her $12,000 per month in temporary support.

On March 4, the trial court denied Linden's motion for revision on the matter, agreeing with the commissioner's assessment that Linden's financial documents "were lacking" and that "[Linden's] ability to pay is greater than reflected in his monthly income calculations." Linden did not pay the full monthly amount required between January 2022 and May 2023, and by the time of trial, arrears had accrued to $137,916.86.

Beginning on May 17, 2023, the court held a five-day trial in which the value and distribution of the parties' assets were key issues. The community property included CHP Inc. and its related subsidiaries, which Linden and his partner Klatik had created during the marriage.[3] To value the businesses, McGarvey relied on business evaluation expert Arik Van Zandt. Overall, Van Zandt determined that the total value of Linden's interest in the companies was $2,730,000 in Canadian dollars (CAD).[4]

On August 31, the trial court issued its final divorce order along with its findings of fact and conclusions of law. Exhibit A to both the court's divorce order and the findings and conclusions is a spreadsheet itemizing the parties' community and separate property and the court's distribution. The court awarded McGarvey 57 percent of the community assets, with the remaining going to

---

[3] Linden retained a 50.1 percent interest in CHP Inc. and CHP Properties Inc., the separate entity that managed the businesses' commercial property in Vancouver, BC. Linden also retained 100 percent interest in three other entities: Mohawk Worldwide Inc., CHP Capital US Inc., and Scout Capital ULC.

[4] Van Zandt clarified at trial that although the report stated "US$" in the upper left-hand corner, the amounts were in Canadian Dollars. In closing argument, McGarvey adjusted the totals to $2,026,752 in U.S. dollars.

Linden. It awarded McGarvey spousal support for five years, starting at $12,000 for 18 months, then $9,000 for 24 months, followed by $5,000 for another 18 months.

The trial court also found Linden had failed to pay his full support obligation under the temporary orders and entered judgment against him for the arrears, which totaled $161,916.86,[5] plus 12 percent annual interest. It also granted McGarvey's request for attorney fees of $60,000, finding she had financial need and Linden had an ability to pay. Overall, Linden was ordered to pay McGarvey $221,916.86.

On September 15, 2023, Linden filed a notice of appeal seeking review of the court's final divorce order and the related findings and conclusions. On October 30, 2023, Linden also filed a motion to reopen the judgment under CR 60, arguing newly discovered evidence—including Linden and McGarvey's joint 2022 tax return, testimony from the accountants who prepared the tax return, and a 2023 updated dividend statement for CHP Inc.—justified a recalculation of the parties' incomes and thus Linden's maintenance obligation.[6] The trial court denied the CR 60 motion, reasoning in part that the 2022 tax return "is not new information" given that the information was "in existence before trial." Instead, the court concluded that Linden could have produced this evidence in some other form, whether it be a "pro forma tax return or other reports." Linden amended his

---

[5] This amount included payments from November and December 2021 in addition to January 2022 through May 2023.

[6] Linden also attempted to introduce evidence of McGarvey's income via a recent art sale.

notice of appeal to also seek review of the trial court's denial of his CR 60 motion.[7]

## DISCUSSION

Linden argues that the trial court abused its discretion in making a disproportionate division of property—57 percent to McGarvey and 43 percent to Linden—and awarding spousal maintenance to McGarvey. He additionally claims the court made two discrete calculation errors—double-counting financial assets and under-valuing the marital home—resulting in a split that is actually 65 percent to McGarvey and 35 percent to Linden.[8] McGarvey disputes the alleged errors and argues the resulting division is fair and equitable given the statutory factors.

I.      Property Division

Linden challenges four conclusions and findings related to division of the marital assets as being unsupported by substantial evidence. First, he argues the trial court made two major valuation errors: double-counting the value of commercial property owned by one of his businesses and undervaluing the marital home. Additionally, he asserts it was an abuse of discretion to award the entire marital home to McGarvey and to assign McGarvey an interest in cryptocurrency he allegedly controlled. We address each claim in turn.

---

[7] Linden assigns error to the trial court's order denying his post-trial motion to reopen the judgment under CR 60, but provides no substantive argument in support. "An assignment of error not argued in a party's brief is abandoned." Herdson v. Fortin, 26 Wn. App. 2d 628, 637 n.3, 530 P.3d 220 (2023). Thus, we do not address this claimed error.

[8] Initially, Linden also assigned error to the court's finding 22(j) regarding the CG Wealth Management Account, but withdrew this claim in his reply brief.

A. Double-Counting the Value of the CHP Properties

Linden assigns error to the trial court's finding of fact 22(i), which stated in relevant part as follows:

> Both parties presented expert analysis, evidence, and testimony regarding the value of Respondent's business interests. Petitioner utilized a valuation expert to analyze financial records and determine a value for Cypress Hills (incorporating the business interests but excluding the commercial offices). Respondent relied on his testimony and the testimony of his business partner (majority owner) and of employees of the business. . . . Petitioner's expert provided the court with a value based on historic earnings and growth, reasonably estimated future income and growth, and Respondent's good will.

Linden limits his assignment of error specifically to the portion of the second sentence that states McGarvey's expert determined "a value for Cypress Hills (incorporating the business interests but *excluding the commercial offices*)" (emphasis added).[9] Linden asserts that Van Zandt's valuation *included* the commercial offices and was already accounted for in the valuation of Linden's business interests in line 5 of Exhibit A, so the trial court erred when it listed the commercial office space as a separate asset in its overall division of the property.

On appeal, "[a] trial court's factual findings are accepted if supported by substantial evidence." In re Marriage of Wright, 179 Wn. App. 257, 262, 319 P.3d 45 (2013). " 'Substantial evidence exists if the record contains evidence of

---

[9] As an initial matter, McGarvey argues Linden did not preserve the error because he did not challenge it below. Under RAP 2.5(a), we may refuse to review any claim of error which was not raised in the trial court. McGarvey argues Linden had numerous opportunities to raise the double-counting issue, as the trial court's spreadsheet was largely adopted from an exhibit McGarvey presented for her proposed asset distribution. But Linden submitted his own asset division proposal that did not include any double-counting error. The proper valuation of the businesses was a contested issue at trial, and the valuations that are challenged on appeal appeared in the court's final divorce order and findings and conclusions. McGarvey does not dispute that these were final appealable orders. Linden did not waive his challenge to alleged valuation errors.

sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007) (quoting In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002)). " '[T]he record is reviewed in the light most favorable to the party in whose favor the findings were entered.' " In re Marriage of Kaplan, 4 Wn. App. 2d 466, 479, 421 P.3d 1046 (2018) (quoting In re Marriage of Gillespie, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997)). An appellate court should "not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999) (citing In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996)).

"Although the trial court has broad discretion in the distribution of assets and is not obliged to distribute those assets evenly, it must calculate the assets fairly." In re Marriage of Mansour, 126 Wn. App. 1, 14, 106 P.3d 768 (2004). Double-counting an asset is reversible error. Id. at 15.

The court's spreadsheet attached to its findings and conclusions valued the "Commer[ci]al Office Space in Yaletown, Vancouver BC (50% interest)" at $533,385.[10] Linden does not dispute this assigned value, as he used the same value. But he asserts that the line item for his interest in the five companies—

---

[10] The court's spreadsheet includes the same values for Linden's interests in the five companies and the Yaletown commercial office properties as in McGarvey's Exhibit 123, a spreadsheet entitled "Summary of Assets and Liabilities" that summarized the evidence and was admitted for illustrative purposes only. Line 9 of McGarvey's spreadsheet values Linden's interests in "CHP, Inc., CHP Properties, Mohawk, CHP Capital US, Scout Capital," at $2,026,752.00 in U.S. dollars, and Line 10 separately values the community interest in "Commer[ci]al Office Space in Yaletown, Vancouver BC – (Exhibit 304)" described as "Real Property," at $1,066,770 and the community's interest at $533,385.

already listed in the spreadsheet as "CHP, Inc., CHP Properties, Mohawk, CHP Capital US, Scout Capital" and valued at $2,026,752—included the value of this same property, as it was owned by one of the five listed companies, CHP Properties, so the court impermissibly double-counted the property.

To value Linden's interests in the companies, the court relied on expert Van Zandt. Van Zandt identified five separate companies in which Linden had equity interests: CHP Inc., CHP Properties, Mohawk Worldwide, CHP Capital US Inc., and Scout Capital. He initially calculated values for each separately, and, specifically, to value CHP Properties, Van Zandt's report explains that he used the "cost approach," rather than "the income approach or market approach," as "CHP Properties is a real estate holding company whose value is derived primarily from the value of the underlying real estate."[11] Accordingly, to determine CHP Properties' equity value, Van Zandt made no adjustments to its reported assets and liabilities but adjusted the properties and equipment using an appraisal report provided by Linden that indicated an aggregate value of $2,500,000 for the three office building units owned by CHP Properties.[12] Based on this adjustment, Van Zandt calculated the equity value of CHP Properties at CAD $323,800. He then calculated the aggregate value of all of Linden's

---

[11] Van Zandt explained at trial, "from a balance sheet perspective, it's effectively the value of the real estate owned less the debt, with some other items as well, so just cash and some other receivables."

[12] Van Zandt testified that in valuing the companies in which Linden had interests, "one thing on CHP Properties that is unique is that I had an appraisal, an actual real estate appraisal, of those physical properties that I could use to adjust the book value of the property as shown in the balance sheet to the market value based on those appraisals." Asked if he "actually ma[d]e an adjustment based on that appraisal," Van Zandt answered, "I did, yes." Van Zandt also noted that though the appraisal was dated January 26, 2023, he assumed the value was the same as of the date of his valuation, December 21, 2021.

ownership interest in the five companies to be CAD $2,730,000.[13] The court valued the five companies at $2,026,752, which is the amount that McGarvey calculated by converting Van Zandt's valuation to U.S. dollars.[14]

In response, McGarvey contends that the trial court's separate valuations of Linden's interest in the CHP commercial office spaces in Yaletown and the business interests in the five companies should be affirmed because they are "within the range of evidence offered by both parties." Rockwell, 141 Wn. App. at 251. McGarvey claims the language in the court's finding 22(i)—that Van Zandt determined "a value for Cypress Hills (incorporating the business interests but excluding the commercial offices)"—indicates the trial court's "intent to value the commercial properties separate from the Cypress Hill interests." She argues that "even if the trial court's findings do not make clear the exact method it used to value Mr. Linden's business interest, the value it chose is essentially identical to a calculation that excludes Mr. Linden's interest in CHP Properties."

Specifically, McGarvey suggests the trial court took the Van Zandt value for Linden's interest in all the business entities, CAD $2,730,000, and subtracted Linden's interest in the CHP Properties entity, CAD $162,223.80 (50.1 percent of the total value, CAD $323,800), which equals CAD $2,567,776.20. She then suggests that applying a conversion rate from the date the Van Zandt report was

---

[13] Although Van Zandt's business valuation report indicates the values are in U.S. dollars, his trial testimony clarified that the amounts are in Canadian dollars and required additional conversions.

[14] McGarvey's "Summary of Assets and Liabilities" values Linden's interest in the five companies as $2,026,752. When asked how she arrived at $2,026,752, McGarvey explained she "simply converted to U.S. dollar on the date of Arik Van Zandt's report, which was December of 2021." There was no testimony about the specific exchange rate, but based on McGarvey's final valuation of $2,026,752, it appears she applied an exchange rate of .7424. ($2,026,752 divided by $2,730,000 equals .7424).

shared in December 2021—.79—to the remaining assets of CAD $2,567,776.20 yields $2,028,543.20. She notes that this is approximately the same amount the trial court listed in Exhibit A for the business interests—$2,026,752.00.

McGarvey contends that " 'where a judgment or order is correct it will not be reversed merely because the trial court gave wrong or insufficient reason.' " View Ridge Estates Homeowners Ass'n v. Guetter, 30 Wn. App. 2d 612, 643, 546 P.3d 463 (2024) (quoting Pannell v. Thompson, 91 Wn.2d 591, 603, 589 P.2d 1235 (1979)). But the problem with the court's valuation of Linden's business interests is not that the court provided a "wrong or insufficient reason." Rather, it is that the finding lacks substantial evidence to support it. No evidence presented at trial supports the calculation McGarvey now argues as a basis for the court's valuations in Exhibit A, i.e., a valuation of Linden's business interests, including CHP Properties, that subtracts out the real property portion of CHP Properties. To the contrary, Van Zandt testified that CHP Properties is "a real estate holding company whose value is derived primarily from the value of the underlying real estate." And the court specifically listed all five companies— "CHP, Inc., CHP Properties, Mohawk, CHP Capital US, Scout Capital"—and valued them together at $2,026,752, which is the same figure McGarvey presented in her summary spreadsheet[15] and which she testified was a conversion of Van Zandt's valuation (CAD $2,730,000) into U.S. dollars.

---

[15] Line 9 of McGarvey's spreadsheet valuing "CHP, Inc., CHP Properties, Mohawk, CHP Capital US, Scout Capital" refers to Exhibit 17 and Exhibit 68, presumably as the basis for the calculation. Exhibit 17 is Van Zandt's report, but Exhibit 68, identified in the trial exhibit list as "Supplemental Data Request – Valuation Services Letter," was not admitted at trial and is not in the record on appeal.

We conclude that substantial evidence does not support finding 22(i) in the FNFCL that Van Zandt's calculations incorporated business interests but excluded the commercial property, and Exhibit A (the spreadsheet) valuing the combined business interests and the commercial property separately. Thus, we reverse and remand to the trial court to correct finding 22(i) and Exhibit A to avoid double-counting the commercial properties.

### B. Value of the Marital Home

Linden next asserts that the trial court erred in valuing the marital home at $4.4 million, challenging finding 22(g) and Exhibit A (Line 1).[16] At trial, evidence of three appraisals of the home was admitted: (1) a May 2021 appraisal for $3.9 million by McGarvey's expert, (2) Linden's expert's testimony of a value of $4.9 million based on an August 2022 appraisal, and (3) McGarvey's expert's testimony of a value of $4.6 million based on a March 2023 appraisal. In finding 22(g), the trial court stated,

> Both parties presented expert analysis, evidence, and testimony regarding the value of the former family home. The court finds both real property appraisers provided credible reasons for their respective comparable properties, valuation analysis, and recommended value of the former family home. To determine value for the purpose of trial, the court utilizes the simplistic, but ultimately equitable method of choosing a value that is at the mid-point of the two valuation experts as the court believes such a value is reasonable and appropriate.

---

[16] McGarvey claims Linden did not preserve this issue. However, as with the court's double-counting of the CHP property, the valuation of the marital home was a contested issue at trial as to which both parties presented evidence. The challenged valuation appears in the court's final divorce order and findings and conclusions. Thus, Linden did not waive his challenge to the court's valuation of the home and may raise it on appeal.

In its spreadsheet of assets, the court then listed the value of the house as $4.4 million.

Linden asserts the trial court erred by averaging the May 2021 ($3.9 million) and August 2022 ($4.6 million) appraisals, instead of using the two values testified to at trial, the August 2022 ($4.6 million) and the March 2023 ($4.9 million) appraisals. He argues that intermixing the value of the house at the time of trial, August 2022, with the value at separation, May 2021, is inappropriate because it denies him the benefit of the appreciation of the home and departs from case law indicating the court must select a valuation from the date of separation or at the time of trial. We agree.

Courts have broad discretion to pick an evaluation date that is equitable. Koher v. Morgan, 93 Wn. App. 398, 404, 968 P.2d 920 (1998) (appropriate to utilize appraisal value at date of trial as opposed to separation); see also Griswold, 112 Wn. App. at 351 (court used "time of separation" appraisal as the house depreciated during the ongoing divorce proceedings due to neglect).

Here, trial took place in May 2023. The evidence at trial included two valuations by McGarvey's expert, $3.9 million in May 2021, the date of separation, and $4.6 million in March 2023, two months before the trial. Linden's expert provided an evaluation of $4.9 million as of August 2022, closer to the date of trial than the date of separation. The court stated it would choose a value that was a midpoint between the two experts, as both were credible. "[W]hen parties offer conflicting evidence in valuation, the court may adopt the value asserted by either party, or any value in between the two." Rockwell, 141 Wn.

App. 250-51 (value of federal pension); see also In re Marriage of Sedlock, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993) (valuation of professional assets). But the court chose the midpoint of McGarvey's valuation of $3.9 million in May 2021, the time of separation, and Linden's valuation of $4.9 million in August 2022, 15 months after separation and 9 months prior to trial. This "midpoint" valuation was lower than either of the two valuations closest to trial, i.e., Linden's August 2023 valuation of $4.9 million and McGarvey's March 2023 valuation of $4.6 million and, thus, was not supported by substantial evidence.

Moreover, "[i]f the property is to be valued as of the date of trial rather than the date of separation, appreciation as well as depreciation in value should be considered in making an equitable division." Lucker v. Lucker, 71 Wn.2d 165, 168 426 P.2d 981 (1967). The trial court's $4.4 million valuation failed to account for the appreciation of the house that both parties' experts identified. "[U]pon noting an abuse of discretion which fosters an inequity, we will correct the decree in such a way as to remove or ameliorate such inequities." Id. at 167. Thus, we remand to the court to modify the valuation to an amount between $4.6 and $4.9 million, to capture the appreciation in the home's value.

C. Award of the Marital Home to McGarvey

Linden challenges the trial court's decision to award the marital home to McGarvey based on its finding of fact 22(g) that "[t]he home contains her art studio. . . and is necessary if she transforms her art into an income generating business." He asserts the evidence does not support a determination that retaining the art studio was necessary to continue to develop her career and that

McGarvey could theoretically sell the home, purchase a more affordable home, and acquire different, less expensive studio space.

McGarvey testified she had built a custom art studio in the Clyde Hill home using $30,000 gifted from her mother. She further testified that the studio and home permit her to show her work to "people that are interested in my art," who come from her neighborhood, and that "[i]f there's any hope for [her] to create a career at age 55, barring going back to school, [it] is staying with [her] studio." The evidence also showed that McGarvey's only recent income was derived from sales of art created in the studio. The court found there were "credible reasons why [McGarvey] wishes to remain in the home." The trial court's finding that the art studio was "necessary" for McGarvey's art to become an income-generating business was supported by substantial evidence.

Linden also challenges the court's decision to award the house to McGarvey rather than order its sale and a division of the proceeds. He argues McGarvey could retain some of the money from the sale and obtain studio space elsewhere for significantly less money. He also cites McGarvey's testimony referencing the home as a "nest egg" and argues she is not "entitled to maintain her former standard of living as a matter of right," citing Kaplan, 4 Wn. App. 2d at 474.

In Kaplan, the court rejected an "overly narrow" reading of the statement from an earlier case that " 'the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives.' " 4 Wn. App. 2d at 474 (quoting Rockwell, 141 Wn. App. at 243). Instead, it held that this objective was

" 'permissive, not mandatory.' " Id. at 475 (quoting In re Marriage of Doneen, 197 Wn. App. 941, 950, 391 P.3d 594, review denied, 188 Wn.2d 1018, 396 P.3d 337 (2017)). Thus, while not "a mandate for trial courts to predict the future," the objective is still one "to be considered as the trial court determines the 'fair, just and equitable division of property.' " Id. (quoting Doneen, 197 Wn. App. at 949).

In considering McGarvey's future financial position, that is what the court did here. Moreover, Linden did not assign error to the portion of finding 22(g) stating that McGarvey lacks assets with significant value and that the home provides equity necessary for her retirement; thus, it is a verity on appeal. In re Est. of Little, 9 Wn. App. 2d 262, 274, 444 P.3d 23 (2019) ("Unchallenged findings of fact are verities on appeal."). Thus, the trial court's award of the family home to McGarvey, after considering her assets and future financial situation, was within its discretion.

### D. Cryptocurrency Award

The court awarded cryptocurrency to McGarvey as her separate property, valued at $0. Linden argues this award was not supported by substantial evidence. We disagree.

While the court has no ability to distribute an asset if a party disposed of it before trial, White v. White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001), that is not the situation here. The court found that the community possessed cryptocurrency assets, valued them at $0, and distributed them to McGarvey. On appeal, we do not weigh the evidence or adjudge witness credibility; instead, we must determine whether there was substantial evidence to support the court's

finding. <u>Greene</u>, 97 Wn. App. at 714. Here, testimony from multiple witnesses, including Linden himself, established Linden had a personal interest in cryptocurrency.[17]

In an initial deposition, Linden testified to personally owning cryptocurrency. When asked about it at trial, he stated instead that the cryptocurrency was managed under one of the CHP Inc. businesses, Spira, although he also said the ownership "would [] be a personal benefit to [him]." Additionally, despite initially asserting the value of the cryptocurrency managed by Spira was captured by Van Zandt's evaluation of CHP Inc., he also confirmed he did not obtain a separate valuation of Spira.

McGarvey testified to her understanding that an entity under the umbrella of CHP Inc., Luxxfolio, dealt in cryptocurrency. She further stated that Luxxfolio eventually "folded," "the stock went to zero," and Linden and his primary business partner took the crypto miners and their crypto accounts personally, and they were "not under the umbrella of [CHP]." McGarvey also testified that she believed she had a community waste claim, because according to [Van Zandt], "that money was lost, the 1.6 million. . . . We paid taxes on it. And it is nowhere." McGarvey stated that Linden mentioned in his deposition that "he owns cryptocurrency," but she did not know if "it's hidden or not reported," but it was

---

[17] Linden argues his deposition testimony cannot be considered substantive evidence under CR 32(a)(1) and (3). This is incorrect. CR 32(a)(1) states that "[a]ny deposition may be used by any party. . . for any purpose permitted by the Rules of Evidence." Under ER 801(d)(2), admissions of a party-opponent are not hearsay and may be admitted as substantive evidence. <u>State v. Garland</u>, 169 Wn. App. 869, 886, 282 P.3d 1137 (2012). The deposition was admitted at trial with no objection, so it was properly before the court.

not accounted for. She testified that Van Zandt "was not able to value cryptocurrency involvement or Bitcoin miners."

Van Zandt, the primary valuation expert, testified that he attempted to review whether CHP Inc. continued to own cryptocurrency after a major cash out, but was unable to determine whether any of the business entities he examined still held cryptocurrency based on the information available. The Chief Financial Officer for Cypress Hills, Marshall House, testified that CHP had purchased shares in Luxxfolio and originally Linden and Klatik had been among the directors, but "they had stepped away from that" and there was different management now. He stated that Luxxfolio was still operating, "trading on the stock exchange," and the company still had approximately 165 mining machines. Asked what happened to the cryptocurrency that had been mined, House stated it was used to pay "for the machines and various expenses." He was not asked and did not testify as to whether Linden personally held Luxxfolio assets. But House did testify that CHP Inc. continued to hold cryptocurrency, both Bitcoin and Ethereum, exclusively in Spira.

Though no evidence at trial established a value for the cryptocurrency, there was substantial evidence to support the court's finding that Linden owned cryptocurrency. Linden did not provide evidence establishing that he no longer owned cryptocurrency. The trial court's finding was within the acceptable range of credible evidence. See Rockwell, 141 Wn. App. at 248. Thus, it was not an abuse of discretion for the trial court to determine the community assets included cryptocurrency, to value it at $0, and to award the asset to McGarvey.

## II.     Fairness of Overall Property Division

Linden argues that based on the court's double-counting and home valuation errors, the resulting 64/36 split of assets created a patent disparity in the parties' economic circumstances and was neither just nor equitable.[18] For her part, because McGarvey contends the court did not err in valuing the CHP businesses or the home, she also contends the 53/47 division was fair and equitable, considering she was the economically disadvantaged spouse and the marriage lasted 21 years.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013), rev. denied, 186 Wn.2d 1017 (2014). "This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion." Id. (citing In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (trial court is in the best position to determine what is fair under the circumstances); In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009)).

---

[18] The 64/36 split is based on a recalculation that corrects the valuation errors. The court initially awarded $3,721,743.53 to McGarvey, and $2,760,734.85 to Linden. To correct the double-counting error, Linden's assets would decrease by $533,385.00, for a new total of $2,227,349.85. Additionally, because the house valuation error undervalued McGarvey's assets, even using the lowest appraisal near the time of trial, $4.6 million is $200,000.00 more than the $4.4 million value the court used, resulting in a new total for McGarvey's assets of $3,921,743.53. Combined, the revised assets would total at least $6,149,093.38. The resulting percentage split is then 64 percent (rounded up) and 36 percent (rounded down).

Here, the record shows the trial court considered the RCW 26.09.080 factors.[19] In particular, the court contemplated the economic positions of each party at dissolution and concluded a 57/43 split was just and equitable. But because the double-counting and house valuation errors result in a more pronounced 64/36 split, we remand to the trial court to determine whether, after correcting those errors, the overall distribution is just and equitable. See In re Marriage of Tupper, 15 Wn. App. 2d 796, 814, 478 P.3d 1132 (2020) (reversing trial court's division of a Social Security benefit as void and remanding for reconsideration of the entire property distribution); In re Marriage of Shui, 132 Wn. App. 568, 574, 587, 591 125 P.3d 180 (2005) (remanding for reconsideration of distribution of assets where trial court methodology distributing the main asset was erroneous, and court compounded the error).

Linden also contends it was an abuse of discretion for the trial court to fail to require McGarvey to refinance the home equity line of credit (HELOC) against the Clyde Hill home solely in McGarvey's name after it was determined she would retain the home. In light of our disposition, on remand, the trial court may consider this request in the context of the overall distribution.

III.     Maintenance Award

Linden argues the trial court erred by failing to conduct a fair consideration of the relevant statutory factors regarding maintenance under RCW 26.09.090.

---

[19] The court must consider (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of property is to become effective. RCW 26.09.080.

He assigns error to the entirety of the finding related to spousal maintenance, which states:

> The court finds spousal maintenance is appropriate in this case. Petitioner has demonstrated her need and Respondent's ability to pay support. The court utilizes spousal support as a flexible tool to obtain an equitable division of assets and liabilities in this marriage. In this case Petitioner has been out of the workforce for some time. She seeks to make her art business profitable and/or to otherwise become financially self-sufficient. The court sets spousal maintenance at an amount (decreasing over time) and for a duration sufficient for Petitioner to reasonably become self-sufficient.

He also argues the trial court abused its discretion when it failed to make findings regarding his ability to pay and McGarvey's financial need. McGarvey argues the trial court did not abuse its discretion in granting her maintenance. We agree with McGarvey.

The trial court exercises broad discretion regarding the award of maintenance, which is governed by RCW 26.09.090. In re Marriage of Wilcox, 3 Wn.3d 507, 517, 553 P.3d 614 (2024) The statutory factors include, but are not limited to:

> (1) the financial resources of the party seeking maintenance; (2) the time needed to acquire education necessary to obtain employment; (3) the standard of living during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; (6) and the ability of the spouse from whom maintenance is sought to meet his or her needs and obligations while providing the other spouse with maintenance.

RCW 26.09.090.

Although a trial court must consider the factors listed in RCW 26.09.090(1), "it is not required to make specific factual findings on all of the

factors." In re Marriage of Anthony, 9 Wn. App. 2d 555, 564, 446 P.3d 635

(2019). In Wilcox, the Washington Supreme Court recently discussed

considerations in awarding maintenance:

> An award of maintenance is meant to be "a flexible tool by which
> the parties' standard of living may be equalized for an appropriate
> period of time." Ultimately, the court's paramount concern must be
> the parties' economic conditions postdissolution. Thus, in instances
> "[w]here the assets of the parties are insufficient to permit
> compensation to be [a]ffected entirely through property division, a
> supplemental award of maintenance [may be] appropriate."

3 Wn.3d at 520-21 (quoting Washburn v. Washburn, 101 Wn.2d 168, 178-79,

677 P.2d 152 (1984)). However, " '[m]aintenance not based on a fair

consideration of the statutory factors constitutes an abuse of discretion.' " Id. at

521 (quoting Anthony, 9 Wn. App. 2d at 564). Otherwise, " 'the only limitation on

amount and duration of maintenance under RCW 26.09.090 is that, in light of the

relevant factors, the award must be just.' " In re Marriage of Valente, 179 Wn.

App. 817, 821, 320 P.3d 115 (2014) (quoting In re Marriage of Bulicek, 59 Wn.

App. 630, 633, 800 P.2d 394 (1990)), overruled in part by Wilcox, 3 Wn.3d at

507.

Here, the primary disputes revolve around factor one, McGarvey's

financial resources, and factor six, Linden's ability to pay while meeting his own

needs and obligations. Although the trial court did not make specific factual

findings, the record shows it did consider those factors, as well as the other

relevant factors.

Regarding McGarvey's financial resources, the court explicitly considered

the extent of time McGarvey was out of the work force—nearly 20 years—and

the time she would need to eventually make her artwork profitable. Further, McGarvey presented the court with evidence through her testimony and her financial declaration about her expected monthly income without support. The court also made the unchallenged finding, which is thus a verity, that McGarvey retained no assets of significant value prior to asset division. Thus, the court engaged in "fair consideration," Wilcox, 3 Wn.3d at 521, of McGarvey's financial need.

The record also indicates the trial court assessed Linden's ability to pay and meet his own needs. Again, the trial court was not required to make a specific finding regarding this factor. Anthony, 9 Wn. App. 2d at 564.

Nevertheless, Linden argues that because there was no finding as to his income, this court is left to guess on what the trial court based its decision. This is not so, especially given the trial court's stated reasoning regarding the CR 60 motion raising the same issue.

At trial, there was ample testimony concerning Linden's income that showed highly variable monthly distributions based on company dividends since 2018.[20] Linden argued that the extraordinary dividends being paid out to him should not have qualified as income in the context of a maintenance determination because he testified that the dividends were being used to pay off an inter-company loan to purchase real estate, so he was not able to personally access these funds. In its findings and conclusions after trial, the court found that Linden "presented testimony and evidence to support his income and expenses

---

[20] McGarvey based Linden's projected income on the most recently available tax return.

and the nature, extent, and values of the parties' assets and liabilities," and found Linden's testimony to be credible.[21]

Subsequently, in a CR 60 motion, Linden sought to introduce his 2022 tax return as newly discovered evidence and to argue his income was artificially inflated. At this point, the trial court explained its views about the evidence of his income presented at trial. An appellate court may use a trial judge's oral opinion to clarify formal findings with which the oral opinion is consistent. In re Marriage of Yates, 17 Wn. App. 772, 773, 565 P.2d 825 (1977). First, the court stated it had based the maintenance determination on the totality of the evidence before the court, "not simply on a prior tax return," which was one of Linden's concerns. Furthermore, it did not find Linden credible regarding the issue of the dividends being deposited into his account that he characterized as passing through to pay down the aforementioned loan; instead, the court found the argument that "income should be limited to that which is actually deposited and used" incorrect and unpersuasive. "[I]t is not an abuse of discretion for the trial court to use the amount of money drawn by the community to calculate income if that value reflects the parties' income and living conditions predissolution." In re Marriage of Palomarez, 15 Wn. App. 2d 187, 192, 475 P.3d 512 (2020). There was also a significant amount of evidence presented at trial—including tax returns and testimony from McGarvey and Van Zandt—that established Linden received regular payments and variable dividends and that based on his income, he was capable of paying the ordered maintenance.

---

[21] The court made the same finding with regard to McGarvey, except that the court stated it found her testimony "substantial and credible."

Therefore, even if the trial court did not make specific findings concerning Linden's income, it did not fail to consider Linden's ability to pay and support himself. The court was presented with and considered evidence on all of the statutory factors, and the trial court did not abuse its discretion when it ordered Linden to pay maintenance to McGarvey.

Linden also seeks relief from the amount he was ordered to pay for arrearages of maintenance under the temporary orders, repeating the same argument about his inability to pay. As the trial court acted within its discretion when it found Linden had the ability to pay maintenance, we also reject Linden's request for relief from the court's order to pay the unpaid temporary maintenance.

IV.    Award of Attorney Fees

Linden argues the trial court abused its discretion when it awarded McGarvey $60,000 in attorney fees under RCW 26.09.140. He specifically assigns error to finding 22(m), which stated McGarvey had a financial need and Linden had an ability to pay.

Under RCW 26.09.140, the trial court may award attorney fees "after considering the financial resources of both parties[.]" "Generally, the needs of the requesting party must be balanced against the other party's ability to pay." In re Marriage of Williams, 84 Wn. App. 263, 272, 927 P.2d 679 (1996) (citing Kruger v. Kruger, 37 Wn. App. 329, 333, 679 P.2d 961 (1984)). A trial court's division of property and award of maintenance may also influence respective needs and ability to pay. In re Marriage of Mathews, 70 Wn. App. 116, 125, 853 P.2d 462

24

(1993), overruled in part by Wilcox, 3 Wn.3d 507; see also Griswold, 112 Wn. App. at 353 (holding that "in light of the substantial assets available to both parties, an award of attorney fees in this case is unwarranted.").

As discussed above, the trial court did not abuse its discretion in determining that Linden had an ability to pay maintenance, especially when considering his retention of income-generating assets. Although McGarvey was awarded a significant portion of assets, the overwhelming bulk of it is in the form of the family home, in which she intends to live. Additionally, except for the maintenance award, the trial court found she did not have other assets of significant value to support herself. So, the determination that McGarvey had a financial need was "within the range of evidence" presented at trial, Rockwell, 141 Wn. App. at 251, regardless of the net assets allocated to her. The court's award of attorney fees to McGarvey was not an abuse of discretion.

V.    Request for Appellate Attorney Fees

McGarvey requests an award of attorney fees for this appeal based on RCW 26.09.140. McGarvey submitted a financial affidavit as required by RAP 18.1(c) to demonstrate financial need. Linden also submitted a financial affidavit, claiming an inability to pay McGarvey's fees. In addition to the considerations of financial need and the ability to pay, the court may also consider the merit of the issues raised on appeal. In re Marriage of Davison, 112 Wn. App. 251, 259-60, 48 P.3d 358 (2002). Linden has raised meritorious issues on appeal that require

remand. Having considered the parties' affidavits and the issues raised on appeal, we order each party to bear their own fees and costs.

CONCLUSION

We remand to the trial court to address the double-counting and house valuation errors and to reconsider whether the overall division of property is just and equitable. We otherwise affirm the other findings and conclusions challenged on appeal.

_Chung, J._

WE CONCUR:

_Coburn, J._     _Hazelrigg, ACJ_